# IN THE COURT OF APPEALS OF IOWA

No. 17-0538
Filed November 8, 2017

**IN RE THE MARRIAGE OF LISA APPENZELLER
AND DANIEL APPENZELLER**

**Upon the Petition of
LISA APPENZELLER,**
     Petitioner-Appellee,

**And Concerning
DANIEL APPENZELLER,**
     Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.


        The husband appeals from a dissolution decree, challenging the award of

physical care and the economic provisions of the decree.  **AFFIRMED.**


        Eric D. Puryear and Eric S. Mail of Puryear Law, P.C., Davenport, for

appellant.

        Jennie L. Clausen and Ryan M. Beckenbaugh of H.J. Dane Law Office,

Davenport, for appellee.


        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

This is an appeal from a decree dissolving the marriage of Lisa and Daniel Appenzeller. The district court awarded the parents joint legal custody of their twin children, with Lisa to have physical care of the children and Daniel to have liberal visitation. On appeal, Daniel challenges the award of physical care, including two evidentiary issues related to the physical care determination. He contends the district court abused its discretion in allowing Lisa to use Daniel's substance-abuse-treatment records for impeachment purposes and erred in allowing the children's therapist to testify regarding the children's therapy sessions. Daniel also challenges the economic provisions of the decree.

I.

The parties met in 2011 and were married in 2012. They have two children together, twins A.M.A. and A.D.A., born in November 2012. Lisa also has an older child, S.R., from a previous relationship. Lisa testified she and Daniel did not know each other very well when they wed since they married only a year after meeting. Once married, she learned Daniel had issues with alcohol, substance abuse, and anger management. She also learned Daniel was addicted to OxyContin.

After the parties separated, they agreed Lisa would have physical care of the children and Daniel would exercise visitation two weeknights per week and every other weekend. The physical care arrangement was changed after a hearing on temporary matters. The parties transitioned to a shared-care arrangement on a 2/2/3 schedule, meaning the children alternated overnights between the parents for periods of two days, two days, and three days. In the

hearing on temporary matters, Daniel volunteered he was undergoing substance-abuse treatment. He also voluntarily produced medical records regarding his substance-abuse treatment to establish he was doing well and could provide care for the children.

Following trial, the district court awarded Lisa physical care of the children with Daniel to have liberal visitation. The district court found that Lisa was the primary caretaker of the children during the marriage, although Daniel did provide assistance. Daniel's drug use was also an issue at trial as it pertained to custody. Daniel denied heroin use at trial until he was confronted on cross-examination with his complete substance-abuse records, at which time he admitted to using heroin in the prior five years and parenting the children during the same period of time he was using heroin. He admitted he told Lisa about his OxyContin use but never told her about his use of heroin. Daniel's heroin use was a factor in awarding Lisa physical care—the district court stated it "[was] very concerned by the fact Daniel was abusing very serious substances while caring for his children. Daniel minimizes his addiction and was not forthright or truthful with his wife or the Court." In rejecting Daniel's request for shared care, the district court found "it is clear the [temporary] shared care arrangement has not been beneficial for the children," it had been "difficult" for them, and "there has been more acting-out by the children." The district court found there was not mutual respect between the parties:

> Daniel testified he was the more superior parent and Lisa was an average parent. He testified she does her "best." Daniel further placed blame on Lisa for the children being injured while being cared [for] by others while they were in the care of Lisa. This

evidence further indicates Daniel's inability to support Lisa effectively in placing the blame on her for such incidents.

The court gave Lisa physical care of the children and gave Daniel visitation every Wednesday evening and every other weekend.

The district court ordered child support in the amount of $605.84 per month for the care of the twins. At the time of trial, Lisa was employed as an operations administrative assistant with Eastern Iowa Community College. In 2015, her compensation from that position was $31,215. Daniel was self-employed as the owner of his business, Two Coats Painting. At trial, he contended his net income from the business was $21,000. Lisa contended his net income was $30,000. Her testimony was based on her knowledge of how Daniel operated his business, including trading for services. The testimony suggested Daniel had annual receipts of approximately $47,000-$50,000. Bank records showed gross proceeds deposited of $46,262. For child support purposes, the district court found Lisa's annual income to be $34,843 and found Daniel's annual income to be $30,000.

Finally, the parties disagreed on property matters, including the value of Daniel's painting business. Lisa estimated its value at $5000. Daniel testified it was worth $2500—an estimate he cautioned was "maybe a little high but fair." He testified his business assets included a 1995 Ford van he valued at $1500, seven ladders ranging in value from $20-$150 each, a paint sprayer worth $200-$300, and drop cloths "worth probably nothing." The court found the value of the business was $5000 and that the net equity in the parties' home was $18,222.19. Lisa was awarded the home. Daniel received the business. Daniel now appeals.

II.

Review of dissolution cases is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons. *See Hensch v. Mysak*, No. 17-0348, 2017 WL 4050671, at *1 (Iowa Ct. App. Sept. 13, 2017). This means we give weight to the district court's findings of fact. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). This also means we will affirm the district court unless the district court failed to do substantial equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *In re Marriage of Lukowicz*, No. 14-0088, 2015 WL 162089, at *4 (Iowa Ct. App. Jan. 14, 2015) (using substantial equity standard). In exercising our review, "[p]rior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995) (citing *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992)).

A.

We first address the issue of physical care of the children, including the related evidentiary challenges. Daniel contends an award of shared care would be more appropriate under the facts presented.

When determining whether shared care is appropriate, we typically consider four factors. *See In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 697 (Iowa 2007)). "The factors are (1) 'approximation'—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the

spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) 'the degree to which the parents are in general agreement about their approach to daily matters.'" *Id.* The factors are not exclusive, however.

> The Iowa Code defines "physical care" as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and enumerated in our case law. "Each factor, however, does not necessarily impact the decision with equal force." In considering these factors, our ultimate objective "is to place the child in the environment most likely to bring him to healthy mental, physical, and social maturity." "The controlling consideration is the best interests of the child." The "best interest of the child includes but is not limited to the opportunity for maximum continuous physical and emotional contact possible with both parents, unless direct physical or significant emotional harm to the child may result from this contact. Refusal by one parent to provide this opportunity without just cause shall be considered harmful to the best interest of the child." We will "ultimately decide[] by determining under the whole record which parent can minister more effectively to the long-range best interests of the children."

*In re Marriage of Orr*, No. 16-1772, 2017 WL 2183891, at *1 (Iowa Ct. App. May 17, 2017) (citations omitted).

Here, shared care is inappropriate, and the award of physical care to Lisa was appropriate and in the best interests of the children. The historical caregiving arrangement, as credibly found by the district court, was one in which Lisa was the primary caregiver. We weigh this factor heavily as stability for the children is incredibly important. See *Hansen*, 733 N.W.2d at 698. We are also concerned about conflict between the parties. Daniel does not show respect for Lisa or her parenting abilities, and the parties do not appear to communicate well. Further, the parties do not appear to be in general agreement about daily

matters, including the educational needs of the children. Beyond those four factors, we note the district court's determination the children were doing poorly under the shared-care arrangement. As our ultimate objective is the children's best interests, we are reluctant to continue an arrangement that appears to be to their detriment. Finally, we note granting Lisa physical care of the twins maximizes their contact with their half-sibling, S.R. *See Marriage of Hunt*, 476 N.W.2d 99, 102 (Iowa Ct. App. 1991) (noting importance of maintaining sibling relationships, including half-siblings).

Daniel raises several evidentiary issues related to the district court's custody determination. First, he contends his substance-abuse treatment records are protected by constitution, statute, and case law and should not have been used at trial. *See* Iowa Code § 622.10(1) (establishing physician-patient privilege); *Ashenfelter v. Mulligan*, 792 N.W.2d 665, 668 (Iowa 2010) (holding mother had "a statutory and constitutional right to privacy in her medical and mental health records").

Daniel's contention his records are privileged and should have been excluded is easily answered: these records were neither offered nor admitted into evidence. Lisa argues these records were available for use as impeachment, which is how she used them. *See* Iowa R. Evid. 5.607 (allowing impeachment). She also argues equity demands completeness. *See Eno v. Adair Cty. Mut. Ins. Ass'n*, 294 N.W. 323, 329 (Iowa 1940) (noting witnesses commonly present only testimony favorable to their position and "[s]ome one must probe for the possible (and usual) remainder"). These arguments all compel the conclusion the use of the records was appropriate.

Daniel additionally argues the materials should not have been discoverable in the first place. He notes privileged materials are excluded from the scope of discovery. *See* Iowa R. Civ. P. 1.503(1). "One resisting discovery through assertion of a privilege has the burden of showing that a privilege exists and applies." *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986). Asserted privileges are to be drawn narrowly because they are exceptions to discovery rules. *See Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801, 805 (Iowa 2000).

We conclude Daniel impliedly waived the privilege. "The physician-patient privilege may be waived by the defendant's disclosure or consent to disclosure of the privileged information." *State v. Demaray*, 704 N.W.2d 60, 65 (Iowa 2005). "[V]oluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." *Miller v. Continental Ins. Co.*, 392 N.W.2d 500, 504–05 (Iowa 1986). "Obviously, the law has no reason to conceal in court what has been freely divulged on the public street, and the only question in such cases becomes the voluntariness of the revelation and the scope of the waiver." *Demaray*, 704 N.W.2d at 65 (quoting 1 *McCormick on Evidence* § 103, at 413). Here, Daniel submitted records of his substance-abuse treatment in anticipation of the temporary matters hearing. The records showed a patient compliant with methadone treatment: they contain drug tests from February, March, April, June, and July 2016 showing positive tests for methadone and negative tests for all other drugs. At trial, however, Daniel admitted to testing positive for opiates—which are delineated separately from methadone on the drug test records—until "approximately January 2016." He

also admitted to being diagnosed with "severe heroin use disorder and moderate cannabis use disorder." In seeking to parcel out the records helpful to him and exclude from consideration the information unhelpful to him, Daniel attempts to use the patient-physician privilege as both sword and shield. This is impermissible. *See State v. Dist. Ct.*, 218 N.W.2d 641, 644 (Iowa 1974) ("The physician-patient privilege was not designed, nor will it be extended, to act as a shield behind which the patient may take refuge after flunking a chapter 321B blood alcohol test to which he voluntarily assented."). We conclude that by introducing partial records at the temporary matters hearing, Daniel waived his privilege.

Daniel's other evidentiary argument centers on the testimony of the children's therapist. He contends the district court erred in allowing the therapist, Mary Schnack, to testify as to what the children said to her during therapy because these statements constituted hearsay. Daniel cites numerous statements referencing Lisa's cooking, Daniel's yelling, and Schnack's examples of coached statements as problematic hearsay. Daniel provides two equitable cases in which reports from a child's doctor, therapist, or counsel were excluded as inadmissible hearsay. *See In re Marriage of Reschly*, 334 N.W.2d 720, 723 (Iowa 1983); *In re Marriage of Mennen*, No. 09-1821, 2010 WL 2384865, at *3 (Iowa Ct. App. June 16, 2010). Daniel argues the admission of this hearsay was prejudicial and merits reversal.

Daniel's evidentiary challenge does not entitle him to any relief. We disagree the statements constituted hearsay. The challenged evidence was not offered for the truth of the matter asserted. *See* Iowa R. Evid. 5.801 (defining

hearsay). The statements were offered to prove coaching and conflict and as a foundation for Schnack's opinion regarding the wellbeing of the children. This distinguishes the admission of this testimony from the written records in the cited cases. Even if the evidence was improperly considered, that does not require reversal given our de novo review of the record. *See Erickson v. Blake*, No. 15-0251, 2016 WL 1130578, at *1 (Iowa Ct. App. Mar. 23, 2016) (citing *In re Marriage of Anderson*, 509 N.W.2d 138, 142 (Iowa Ct. App. 1993)). In conducting our review of the decree, we do not consider any of the challenged testimony. There was thus no prejudice from any of the complained-of testimony.

For the foregoing reasons, we affirm the award of physical care of the children to Lisa. This is the parties' historical caregiving practice. The parties' short experiment with a shared-care arrangement has worked to the detriment of the children. Returning physical care of the children to Lisa, with Daniel having liberal visitation, is in the best interest of the children.

B.

We next address the award of child support. Daniel maintains the district court's finding that his annual net income was $30,000 is not supported by the evidence. We disagree. The court must determine a parent's income from the most reliable evidence presented. *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). There was reasonable evidence Daniel made more money than he reported on his tax returns. Bank deposits showed higher net proceeds and occasional withdrawals that appeared to be payments to Daniel. A journal showed a higher income. Lisa testified Daniel sometimes accepted

trades or goods in lieu of financial payment. Based on this evidence we decline to disturb the child support calculation made by the district court.

C.

Daniel challenges the property division. He argues the district court erred in valuing his business and the marital home and therefore subsequently erred in declining to award Daniel an equalization payment. Iowa is an equitable distribution state. *See In re Marriage of Hansen*, 886 N.W.2d 868, 873 (Iowa Ct. App. 2016). The division need not be equal to be equitable. *See id.* In fact, in short-term marriages, it may be equitable to award the parties the property they brought into the marriage. *See id.*

We conclude the property division is equitable and decline Daniel's invitation to revalue the assets at issue. First, the valuations provided by Lisa are well within the range of the evidence. *See Hansen*, 733 N.W.2d at 703 ("Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence"); *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006) ("[W]e will not disturb the district court's valuation of assets if it was 'within the permissible range of the evidence'" (citation omitted)). Daniel gave evidence to support his estimate of the business's value at $2500. Lisa submitted a financial statement valuing it at $5000. On the home's value, Lisa presented an assessment valuing it at $127,380. Daniel testified he based his proposed value, $136,070, off the value given by the website realtor.com. Second, given the limited assets of both Daniel and Lisa, we conclude an equalization payment would be improper in this case. *See, e.g., McDermott*, 827

N.W.2d at 683 (considering effect of equalization payment on paying party's cash flow).

D.

Both parties request appellate attorney fees. An award of appellate fees is not a matter of right but rests in this court's discretion. *See Sullins*, 715 N.W.2d at 255. We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* Having considered those factors, we decline to award fees to either party in this matter.

III.

In light of the above considerations, we affirm the decision of the district court in all respects.

**AFFIRMED.**