STATE of Iowa, Appellant,

v.

Jay Edward DEMARAY, Appellee.

No. 04–1613.

Supreme Court of Iowa.

Sept. 23, 2005.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Kasey E. Wadding, County Attorney, and Bryan Barker, Assistant County Attorney, for appellant.

James L. Wagner of Gartelos, Wagner & Ament, Waterloo, for appellee.

CADY, Justice.

This case provides us with an opportunity to examine whether blood test evidence obtained by the State pursuant to a written release of medical records, independent of the implied consent statute, may be admissible at trial in an operating while intoxicated (OWI) case. The district court suppressed the defendant's blood test after concluding that a written release of hospital records executed by the defendant was insufficient to waive the physician-patient privilege. Upon our discretionary review of the district court's ruling, we reverse and remand for further proceedings.

## I. Background Facts and Proceedings

In the early evening of February 11, 2004, Jay Demaray lost control of his car on an icy road in Bremer County. The car slid into the ditch and became immobile. After Demaray climbed out of the ditch, another driver lost control of his car and struck him. Demaray was injured.

Deputy Dennis Miller, of the Bremer County sheriff's office, was dispatched to the scene. He spoke to Demaray and noticed the smell of alcohol on his breath.

Upon inquiry, Demaray admitted he consumed one beer. Demaray was then taken by ambulance to a hospital in Waterloo because of his injuries. Deputy Miller did not perform sobriety tests on Demaray at the accident scene, and he did not accompany Demaray to the hospital. He was the only deputy on call that evening and remained at the accident scene. However, Deputy Miller made a request for another law enforcement officer to go to the hospital to obtain a blood sample from Demaray.

Between 8:00 and 8:30 p.m., a deputy from the Black Hawk County sheriff's office went to the hospital to invoke implied consent. However, he was unable to see Demaray because a doctor was treating his injuries. Shortly after 11:00 p.m., Deputy Miller arrived at the hospital. Deputy Miller went to see Demaray, who was in the intensive care unit with a fractured pelvis. By that time, almost four hours had passed since he was originally dispatched to the accident scene. Deputy Miller believed it was too late to invoke implied consent, even though Demaray had not been arrested or asked to submit to a preliminary screening test. *See* Iowa Code § 321J.6(2) ("If the peace officer fails to offer a test within two hours *after the preliminary screening test is administered or refused or the arrest is made,* whichever occurs first, a test is not required, and there shall be no revocation under section 321J.9." (Emphasis added.)). Deputy Miller instead asked Demaray to give his consent for the hospital to release his medical records, which included results of a blood test the hospital performed for treatment purposes. At 11:06 p.m., Demaray signed a release form presented to him by Deputy Miller, which had been obtained from hospital personnel. The form stated:

I hereby authorize Allen Hospital to disclose and deliver to Deputy Dennis Miller the following requested information regarding Jay Edward Demaray for the purpose of accident investigation[:] ... All medical information regarding accident on 02/11/04.

I understand that I may revoke this authorization at any time.

Demaray's medical records showed he had a blood-alcohol concentration of .10 when the hospital collected his blood at 8:52 p.m.

On March 1, 2004, the State charged Demaray with OWI, first offense, in violation of Iowa Code section 321J.2. Demaray filed a motion to suppress the medical records obtained by Deputy Miller. Demaray argued that the blood test results were not admissible because the blood sample was not taken in compliance with the implied consent statute. *See* Iowa Code § 321J.11 ("Only a licensed physician, licensed physician's assistant as defined in section 148C.1, medical technologist, or registered nurse, *acting at the request of a peace officer*, may withdraw a specimen of blood for the purpose of determining the alcohol concentration or the presence of a controlled substance or other drugs." (Emphasis added.)). The State resisted the motion, arguing that the implied consent statute is not the exclusive means by which an officer can obtain blood test results in OWI cases.

The district court granted the motion to suppress. It held the blood test results were privileged, and that the consent by Demaray "did not constitute a consent" for the medical information to be used against him at trial and did not "constitute a waiver of his physician/patient privileges." The State applied for, and we granted, discretionary review.

## II. Standard of Review

■ "When the admission of evidence depends on the interpretation of a statute, we review for correction of errors of law." *State v. Palmer*, 554 N.W.2d 859, 864 (Iowa 1996) (citing *State v. Kjos*, 524 N.W.2d 195, 196 (Iowa 1994)). Accordingly, we review the district court's ruling on Demaray's motion to suppress to determine whether the court correctly interpreted and applied chapter 321J. *Id.*

## III. Merits

■ Our implied consent law is found in chapter 321J of the Iowa Code. "[T]he general purpose of chapter 321J 'is to reduce the holocaust on our highways'" due to drunk drivers, and the implied consent law is one means to achieve this goal. *Id.* at 860–61 (quoting *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967)) (footnote omitted).

To achieve this goal, chapter 321J provides authority for chemical testing of bodily substances from persons suspected of driving while intoxicated. [Section 321J.6] is known as Iowa's implied consent law. The premise underlying implied consent is that "a driver impliedly agrees to submit to a test in return for the privilege of using the public highways." In reality, however, the statute normally requires the express consent of the driver before a test is administered. If the driver refuses the test, the State must revoke his or her driver's license.

Although the laudable goal of reducing deaths caused by drunk drivers could be most easily accomplished by the State's unfettered ability to invoke the implied consent law, the legislature has, nevertheless, placed limitations on the circumstances under which section 321J.6 applies. Only when the requirements of section 321J.6 have been met may the State make a suspected drunk

driver choose between chemical testing for the presence of alcohol or the loss of his or her driver's license.

. . . .

... Section 321J.6 contains the primary conditions limiting the circumstances under which Iowa peace officers may require submission to chemical testing. To rely on the implied consent authorized by section 321J.6, the State must show (1) the withdrawal of bodily substances and the chemical test were "administered at the written request of a peace officer having reasonable grounds to believe that the [defendant] was operating a motor vehicle in violation of section 321J.2" *and* (2) one of six specified conditions exists.

*Id.* at 861–62 (citations omitted; second alteration in original). The six conditions listed in the statute to invoke implied consent are:

*a.* A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

*b.* The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.

*c.* The person has refused to take a preliminary breath screening test provided by this chapter.

*d.* The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.

*e.* The preliminary breath screening test was administered to a person operating a commercial motor vehicle as defined in section 321.1 and it indicated an alcohol concentration of 0.04 or more.

*f.* The preliminary breath screening test was administered and it indicated an alcohol concentration less than the level prohibited by section 321J.2, and the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.

*g.* The preliminary breath screening test was administered and it indicated an alcohol concentration of .02 or more but less than .08 and the person is under the age of twenty-one.

Iowa Code § 321J.6(1)(*a*)-(*g*).

The second condition was applicable to Demaray. *See id.* § 321J.6(1)(*b*) ("The person has been involved in a motor vehicle accident or collision resulting in personal injury or death."). However, instead of invoking implied consent procedures to obtain a blood sample, Deputy Miller used a means not included within the statute: he asked for consent to obtain the blood test the hospital had taken earlier for treatment purposes. *See id.* § 321J.11 ("Only a licensed physician, ... *acting at the request of a peace* officer, may withdraw a specimen of blood for the purpose of determining the alcohol concentration or the presence of a controlled substance or other drugs." (Emphasis added.)); *see also id.* § 321J.6(1) (noting that a test under the implied consent statute "shall be administered *at the written request of a peace officer*" (emphasis added)). Therefore, the first issue we face is whether section 321J.11 is the exclusive means by which law enforcement may obtain a blood sample from a defendant in an OWI case.

Section 321J.18 seemingly answers the exclusive-means question:

This chapter does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage or a controlled substance or other drug, including the results of chemical tests of specimens of blood, breath, or urine obtained more than two

hours after the person was operating a motor vehicle.

*Id.* § 321J.18. In commenting on this section, we have said it expresses our legislature's intent that the chapter "not ... be construed as limiting the introduction of competent evidence bearing on whether an accused was intoxicated." *State v. Charlson*, 261 Iowa 497, 505, 154 N.W.2d 829, 833 (1967).

Nevertheless, Demaray argues that our prior case of *State v. Wallin*, 195 N.W.2d 95 (Iowa 1972), is contrary and requires the statutory procedure for the collection of blood samples to be followed to support the admission of the test results at trial. In *Wallin*, we held that the results of a blood test were inadmissible when the officer who made the request for the defendant's consent to take a blood test under the implied consent law did not comply with the statutory procedure for collecting the sample. *Id.* at 97–98. We explained that the "defendant's consent to a blood test in response to the written request of a peace officer as provided in section 321B.4 was consent that a test could be taken in compliance with the Implied Consent Law and not otherwise." *Id.*

We read *Wallin* to stand for the proposition that the statutory implied consent procedure must be followed, but only when the implied consent procedures are invoked. Thus, our holding in *Wallin* is not contrary to section 321J.18, because it does not apply to blood-test evidence obtained independently of the implied consent law. In fact, we specifically stated in *Wallin* that "[c]onsent may be given independent of [chapter 321J]; and the requirement of the implied consent law may be waived." *Id.* at 98.

■ We now reiterate that the implied consent law is not the exclusive means by which the State may obtain blood test evidence from a defendant in an OWI pro-

ceeding. *See* Iowa Code § 321J.18 ("This chapter does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage...."). In this case, the officer did not invoke the implied consent procedures, and consequently, we do not judge the admissibility of the blood test under the standards applicable to the implied consent standards. Instead, the blood test was obtained by means of a release of medical records. Thus, we turn to the standard described in section 321J.18, which requires evidence obtained outside the implied consent law to be "competent," as well as the general standards governing waiver and release under state law.

■ " 'Competent evidence' is evidence that is admissible and relevant on the point in issue." *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785, 790 (1991) (citing *Hammann v. City of Omaha*, 227 Neb. 285, 417 N.W.2d 323 (1987)). It is a synonym of "admissible evidence." *See Black's Law Dictionary* 596 (8th ed.2004). Thus, if Demaray's blood test results are otherwise inadmissible under the law of evidence, section 321J.18 does not make them admissible. *See State v. McGovern*, 164 Vt. 67, 664 A.2d 275, 276 (1995) ("Without a statutory basis for excluding a breath test, the rules of evidence determine whether the test results are admissible."); *see also* Iowa R. Evid. 5.501 (stating the common law governs privileges).

■ Of course, evidence covered by a privilege is generally not admissible, absent a waiver. *See generally* 1 John W. Strong et al., *McCormick on Evidence* § 72 (5th ed.1999) [hereinafter *McCormick on Evidence* ]. It is undisputed that the medical records containing the results of Demaray's blood test were covered by the physician-patient privilege. *See* Iowa

Code § 622.10(1) (codifying the privilege); *State v. Henneberry*, 558 N.W.2d 708, 709 (Iowa 1997) ("Three elements must be established in order for the privilege to be applicable: (1) the relationship of doctor-patient; (2) the acquisition of the information or knowledge during this relationship; and (3) the necessity of the information to treat the patient skillfully." (Citations omitted.)); *State v. Eldrenkamp*, 541 N.W.2d 877, 881 (Iowa 1995) ("The privilege extends to medical records that contain information which would be inadmissible at trial as oral testimony from the physician. The information placed in hospital records is privileged communications under section 622.10 'to the same extent that the knowledge and information of the examining or treating physician is privileged.' Information or data recovered from the testing of blood is information furnished passively, through submission to inspection, and is generally under the protection of the physician-patient privilege." (Citations omitted.)). Accordingly, the admissibility of the blood test ultimately turns on whether Demaray waived the privilege. *See* Iowa Code § 622.10(1) ("The prohibition does not apply to cases where the person in whose favor the prohibition is made waived the rights conferred. . . .").

■ The physician-patient privilege may be waived by the defendant's disclosure or consent to disclosure of the privileged information. 1 *McCormick on Evidence* § 103, at 413; *see Eldrenkamp*, 541 N.W.2d at 881 ("If a patient consents to withdrawal of a blood sample for testing of its alcoholic content, the physician-patient privilege is waived." (Citations omitted.)); *State v. Dist. Ct.*, 218 N.W.2d 641, 644 (Iowa 1974) (holding defendant's consent to have blood tested under procedure specified in implied consent statute waived physician-patient privilege as against "ad-

mission of the test results into evidence in any subsequent trial"; stating "[t]he physician-patient privilege was not designed, nor will it be extended, to act as a shield behind which the patient may take refuge after flunking a chapter 321B blood alcohol test to which he voluntarily assented"); *State v. Gonzales*, 121 N.M. 421, 912 P.2d 297, 301 (Ct.App.1996) ("[I]it is generally recognized that when a litigant voluntarily agrees to disclose medical or psychotherapy records, which otherwise would be protected by a privilege, a waiver occurs. Therefore, when a medical patient voluntarily signs a release allowing the disclosure of information which would otherwise be privileged, the privilege must be considered waived." (citing *People v. Superior Ct.*, 231 Cal.App.3d 584, 282 Cal.Rptr. 418, 421 (1991))); Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence* § 6.12.4(a)(1), at 853 (2002) (noting signing a release of medical records may waive privilege). "Obviously, the law has no reason to conceal in court what has been freely divulged on the public street, and the only question in such cases becomes the voluntariness of the revelation and the scope of the waiver." 1 *McCormick on Evidence* § 103, at 413.

■ In deciding whether Demaray waived the privilege in this case by executing the written release, we first note that he does not claim he involuntarily signed the release authorizing the hospital to disclose his records to Deputy Miller. He has therefore waived the issue, and we do not address it. *See* Iowa R.App. P. 6.14(1)(*c* ) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue."). Instead, we consider the scope of the written waiver executed by Demaray.

■ The district court held that Demaray's release of his medical records did "not constitute a consent for the use of

medical information against him at trial," and did not "constitute a waiver of his physician/patient privileges." The district court relied on the broad authority given to the State under the implied consent law to obtain and use blood test results at trial as a reason to strictly limit the scope of the release to use for investigatory purposes, not use in a subsequent criminal prosecution. We disagree with this reasoning.

First, there is no reason to limit the scope of a medical records release by a defendant because the State *could have* invoked implied consent procedures. Such rationale is contrary to the legislative intent expressed in section 321J.18 for the implied consent statute *not* to limit other competent evidence of intoxication, including evidence of other tests.

Second, consent to release medical records to law enforcement for investigative purposes does not preclude the use of the records in a criminal prosecution resulting from the investigation. The purpose for which medical information is released is not necessarily a limitation on the use of the information, especially when the purpose and the use are closely related. The important focus is on the concept of confidentiality. When Demaray consented to the hospital's release of his medical records to Deputy Miller, he destroyed the confidentiality between him and his doctor by allowing the information to be communicated to a third party. *See* 1 *McCormick on Evidence* § 103, at 413 (stating patient's disclosure of the information waives the privilege); *State v. Randle,* 484 N.W.2d 220, 222 (Iowa Ct.App.1992) (holding victim waived physician-patient privilege by authorizing her doctor to release her medical records to the Department of Criminal Investigation, because "[t]he information contained in her medical records was no longer confidential between herself

and her physician"). Even though Demaray retained the right to revoke the consent at any time and consented to the release of the records for purposes of accident investigation, these factors are irrelevant to the issue of whether he waived the physician-patient privilege. Demaray never revoked the consent, and even if he had, it would only have meant that Deputy Miller could not obtain *more* records from the hospital. A revocation of the release after disclosure of the records would not reinstate the privilege for the records already disclosed to Deputy Miller pursuant to the release. The key is confidentiality; it is an essential element of the privilege. *See* Iowa Code § 622.10(1) ("A practicing ... physician ... who obtains information by reason of the person's employment ... shall not be allowed, in giving testimony, to disclose any *confidential* communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline." (Emphasis added.)); 1 *McCormick on Evidence* § 101, at 406–07 (discussing confidentiality requirement). Once Demaray released his medical records to Deputy Miller, he destroyed confidentiality and waived the privilege. Accordingly, the results of the blood test performed by the hospital showing Demaray's blood-alcohol level should not have been suppressed on the grounds of privilege or noncompliance with the implied consent statute.

## IV. Conclusion

The procedures under the implied consent statute are not the exclusive means by which the results of a blood test may be obtained. Consent may be obtained independently of the statute. When Demaray

consented to the release of his medical records to Deputy Miller, he destroyed the confidentiality necessary to assert the physician-patient privilege. In other words, the release of the records waived the privilege. Thus, the district court erred in granting Demaray's motion to suppress.

We therefore reverse and remand for further proceedings.

**REVERSED AND REMANDED.**