# IN THE SUPREME COURT OF IOWA

No. 22–1530

Submitted October 11, 2023—Filed February 9, 2024

**STATE OF IOWA,**

Appellee,

vs.

**COLBY DAVIS LAUB,**

Appellant.

___

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, Judge.

Discretionary review of a district court order granting a defendant's motion to suppress evidence of a chemical breath test obtained via search warrant. **REVERSED AND REMANDED.**

McDonald, J., delivered the opinion of the court in which all justices join.

Brenna Bird, Attorney General, and Timothy M. Hau (argued) and Thomas E. Bakke, Assistant Attorneys General, for appellant.

Matthew T. Lindholm (argued) of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellee.

**MCDONALD, Justice.**

The question presented in this appeal is whether a peace officer investigating a suspected offense of operating a motor vehicle while intoxicated can use a search warrant to obtain from the driver a breath specimen for chemical testing rather than invoking the statutory implied consent procedure set forth in Iowa Code chapter 321J (2022). The district court answered that question in the negative, and it granted the defendant's motion to suppress evidence of the results of the chemical breath test obtained pursuant to a search warrant as well as statements the suspect made to the investigating peace officer. We granted the State's application for discretionary review, and we reverse the district court's suppression ruling.

I.

Driving while intoxicated has posed a significant public health problem since the beginning of the mass production and adoption of the automobile. In 1911, the general assembly addressed the problem when it passed Iowa's first law prohibiting the operation of a motor vehicle while intoxicated. *See* 1911 Iowa Acts ch. 72, § 24 (codified at Iowa Code § 1571-m23 (Supp. 1913)). That law provided that "[w]hoever operates a motor vehicle while in an intoxicated condition shall be guilty of a misdemeanor." Iowa Code § 1571-m23 (Supp. 1913). The law further provided that a conviction under the statute "shall be reported . . . to the secretary of state, who shall upon recommendation of the trial court suspend the certificate of registration of the of the motor vehicle operated by the person violating this section." *Id.*

Since the passage of that first law in 1911, the legislature has repeatedly revised the law criminalizing the operation of a motor vehicle while intoxicated. The amendments are numerous, and we need not discuss them all, but we highlight several significant changes. In 1937, the legislature specifically

addressed for the first time the operation of a motor vehicle while under the influence of narcotic drugs. *See* 1937 Iowa Acts ch. 134, § 312 (codified at Iowa Code § 5022.02 (1939)) (making it a criminal offense to operate a motor vehicle "while in an intoxicated condition or under influence of narcotic drugs"). In 1969, the legislature amended the statute again to address other types of drugs, making it a crime to operate a motor vehicle "while under the influence of an alcoholic beverage, a narcotic, hypnotic or other drug, or any combination of such substances." 1969 Iowa Acts ch. 205, § 1 (codified at Iowa Code § 321.281 (1971)). The 1969 amendment also created an evidentiary presumption in criminal OWI cases. *See id.* It provided that "evidence that there was, at the time, more than ten hundredths of one percentum by weight of alcohol in [a motorist's] blood shall be admitted as presumptive evidence that the defendant was under the influence of an alcoholic beverage." *Id.* In 1982, the legislature created the now familiar per se alcohol offense. *See* 1982 Iowa Acts ch. 1167, § 5 (codified at Iowa Code § 321.281 (1983)). That amendment made it unlawful to operate a motor vehicle "[w]hile having thirteen hundredths or more of one percent by weight of alcohol in the blood." *Id.* The legislature lowered the blood alcohol limit for a per se offense to .10 in 1986 and the current standard of .08 in 2003. *See* 1986 Iowa Acts ch. 1220, § 2 (codified at Iowa Code § 321J.2 (1987)); 2003 Iowa Acts ch. 60, § 1 (codified at Iowa Code § 321J.2(1)(*b*) (2005)).

The implied consent law at issue in this case was adopted in 1963. *See* 1963 Iowa Acts ch. 114, §§ 37–50 (originally codified at Iowa Code chapter 321B (1966), now codified as amended at Iowa Code chapter 321J (2022)). The implied consent law created a legal fiction of consent. The law provided that where there were "reasonable grounds to believe" a person to be "operating a motor vehicle while in an intoxicated condition," the person "shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva,

or urine, and to a chemical test or tests thereof." Iowa Code § 321B.3 (1966). Upon arrest of the suspect, a peace officer could demand a specimen for chemical testing. *Id.* The law gave the arrestee a statutory right to withdraw consent and refuse to provide a sample for chemical testing. *Id.* To incent compliance and disincent refusal, the law provided that refusal would result in revocation of the arrestee's license to drive, *id.* § 321B.7, and that evidence of refusal was admissible in any action, *id.* § 321B.11. The stated purpose of the implied consent law was to "aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition." 1963 Iowa Acts ch. 114, § 37. Additional enforcement was necessary to "reduce the holocaust on our highways part of which [was] due to the driver who imbibe[d] too freely of intoxicating liquor." *State v. Charlson*, 154 N.W.2d 829, 832 (Iowa 1967) (quoting *Severson v. Sueppel*, 152 N.W.2d 281, 284 (Iowa 1967)).

Until 1986, the statutory implied consent law remained codified in chapter 321B of the Iowa Code separate and distinct from the criminal prohibition contained in section 321.281. In 1986, the legislature combined the implied consent law and the criminal prohibition into a new chapter of the Iowa Code, chapter 321J. *See* 1986 Iowa Acts ch. 1220.

II.

On the night of February 12, 2022, Boone County Deputy Sheriff Seth McCrea observed a vehicle driving over the speed limit and swaying within a traffic lane. Suspecting the driver was operating under the influence, Deputy McCrea initiated a traffic stop. Deputy McCrea asked the driver, Colby Laub, how much he had been drinking, and Laub replied, "[A] couple beers." Deputy McCrea asked Laub to step out of the vehicle. When Laub stepped out of the vehicle, Deputy McCrea observed an open container of beer in the panel of the driver's side door. Deputy McCrea asked Laub whether he would participate in

field sobriety testing. Laub refused. Deputy McCrea handcuffed Laub, placed him in his vehicle, and transported him to the local law enforcement center.

While on the way to the law enforcement center or while at the law enforcement center, Deputy McCrea obtained a search warrant under a pilot program that authorized the application for and issuance of search warrants by electronic means. *See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Establishment of the Electronic Search Warrant Pilot Project* (Sept. 1, 2022); Iowa Sup. Ct. Supervisory Order, *In the Matter of Establishment of the Electronic Search Warrant Pilot Project* (Apr. 27, 2020). Deputy McCrea informed Laub that he had a search warrant authorizing him to collect Laub's breath or blood. Deputy McCrea informed Laub that the least intrusive means of testing was a breath test and that if Laub refused to provide a breath specimen, then Deputy McCrea would transport Laub to the hospital for a blood test. Laub agreed to provide a breath specimen for chemical testing. Chemical testing of that specimen showed Laub had a blood alcohol content of .168. Deputy McCrea placed Laub under arrest after receiving the results of the chemical test. At the suppression hearing, Deputy McCrea testified that he exercised his "choice and discretion" to obtain a search warrant rather than invoke the statutory implied consent procedure because it was the "simplest, most straightforward option in this case."

Laub, who was age twenty at the time of the offense, was charged with operating a motor vehicle while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2(2)(*a*) (2022). Laub moved to suppress evidence of the chemical breath test as well as statements he made to Deputy McCrea during the course of the investigation. He argued that Deputy McCrea's use of a search warrant to obtain and test a breath specimen was illegal. Specifically, Laub argued that Deputy McCrea was required to invoke the statutory implied consent

procedure and afford Laub the opportunity to refuse to provide a bodily specimen rather than proceed with a search warrant. Laub also argued that Iowa Code chapter 808, governing the issuance of search warrants, does not authorize the issuance of search warrants for the collection of bodily specimens. Finally, Laub argued that collection and testing of a breath specimen in lieu of invocation of the statutory implied consent procedure violated Laub's federal and state constitutional rights to equal protection of the laws and due process of law.

The district court granted Laub's motion on all three grounds. The district court held Deputy McCrea was not authorized to obtain a search warrant to collect and test Laub's breath specimen. The district court first reasoned that Deputy McCrea was required to invoke the statutory implied consent procedure. Obtaining a warrant, the district court stated, "eviscerate[d] the statutory right to refuse testing under implied consent and arbitrarily and summarily dispense[d] with the rights of citizens to withhold their implied consent." The district court also held that Deputy McCrea had no statutory authority to obtain a search warrant to collect and test bodily specimens. The district court reasoned that chapter 808 "limits search authority to the search of persons and places and seizure of property." Chapter 808, the district court stated, "provides no express language for taking body samples, even breath samples." Finally, the district court held that Deputy McCrea's decision to apply for and execute a search warrant violated Laub's right to equal protection of the laws and Laub's right to due process of law under the United States and Iowa Constitutions.

### III.

"[T]he implied consent statute is not the exclusive means by which law enforcement may obtain chemical testing." *State v. Frescoln*, 911 N.W.2d 450, 454 (Iowa Ct. App. 2017). The statutory implied consent procedure set forth in chapter 321J does "not limit the State's authority to obtain a search warrant

under the general search warrant provisions of Iowa Code chapter 808." *State v. Oakley,* 469 N.W.2d 681, 682–83 (Iowa 1991). The district court erred in holding otherwise.

## A.

This is not the first time this court or the court of appeals has addressed the issue of whether the statutory implied consent law is the exclusive means by which a law enforcement officer can obtain a bodily specimen and conduct chemical testing of the same in investigating an OWI case. In *State v. Oakley*, a driver was accused of OWI and refused to submit to a blood test. *Id.* at 682. The driver "did allow withdrawal of blood with the intention of submitting it for independent analysis." *Id.* The sheriff retained the sample without having it analyzed. *Id.* Three months later, "the county attorney obtained a search warrant, seized the sample from the sheriff and had it tested. The test showed an alcohol concentration of .213." *Id.* The district court suppressed the test result on the ground that chapter 321J limited the state's authority to obtain a search warrant. *Id.* This court reversed the suppression ruling. "The legislature obviously did not intend for chapter 321J to preempt chapter 808." *Id.* at 683. "The provision for a search warrant in section 321J.10 does not limit the State's authority to obtain a search warrant under the general search warrant provisions of Iowa Code chapter 808." *Id.* at 682–83.

Later, in *State v. Rains*, this court stated, "a person cannot be required to submit a blood, urine or breath specimen via a warrant except in strictly circumscribed situations such as under section 321J.10." 574 N.W.2d 904, 913 (Iowa 1998), *overruled on other grounds by State v. Williams*, 895 N.W.2d 856 (Iowa 2017). This statement in *Rains* was based on dicta contained in a footnote in *State v. Stanford. Id.* (citing *Stanford*, 474 N.W.2d 573, 575 n.1 (Iowa 1991)). The dicta in *Rains* and *Stanford* are not binding on this court as precedent. *See*

*Judy v. Nat'l State Bank*, 110 N.W. 605, 607 (Iowa 1907) (stating "pure dicta, not necessary to the decision," is "not binding as a precedent"). This is particularly true given that subsequent decisions have made clear that the dicta in *Rains* and *Stanford* were incorrect statements of law. *See Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 447 (Iowa 2008) ("We adhere to precedent, but also remain committed to clarifying the law as we work with our precedent.").

One of those subsequent decisions is *State v. Demaray*, 704 N.W.2d 60 (Iowa 2005). In that case, this court addressed the issue of "whether blood test evidence obtained by the State pursuant to a written release of medical records, independent of the implied consent statute, may be admissible at trial in an operating while intoxicated (OWI) case." *Id.* at 61. The defendant was involved in a car crash resulting in injury. *Id.* An investigating deputy went to the hospital where the defendant was being treated for his injuries. *Id.* Rather than invoking the implied consent procedure, the deputy asked the defendant to authorize the release of his medical records, which included the results of a blood test the hospital had just performed. *Id.* The defendant consented to the release of his records, which showed blood alcohol concentration of .10. *Id.* at 62. On the defendant's motion, the district court suppressed evidence of the blood test. *Id.*

This court concluded the district court erred and reversed the order granting the motion to suppress. *Id.* at 67. The central question was "whether section 321J.11 is the exclusive means by which law enforcement may obtain a blood sample from a defendant in an OWI case." *Id.* at 63. This court concluded that it was not. *Id.* at 64. "[T]he statutory implied consent procedure must be followed, but only when the implied consent procedures are invoked." *Id.* When the statutory implied consent procedure is not invoked, a peace officer may use other methods to obtain evidence in an OWI investigation. *See id.* ("We now

reiterate that the implied consent law is not the exclusive means by which the State may obtain blood test evidence from a defendant in an OWI proceeding.").

In *State v. Frescoln*, 911 N.W.2d 450, the court of appeals addressed the exact question presented in this case. In that case, a police officer transferred a motorist to the police department on suspicion the motorist was operating a motor vehicle while intoxicated. *Id.* at 452. Rather than invoking the implied consent procedure, the officer "secured a search warrant to seize a sample of Frescoln's blood for chemical testing, which showed Frescoln's blood alcohol content was .093." *Id.* The defendant was found guilty of OWI second offense. *Id.* On appeal, the defendant contended the evidence of the blood test should have been suppressed. *Id.* He argued "the Iowa legislature removed the option of obtaining a chemical sample by warrant when it enacted our implied consent laws. . . . [A]n officer may only obtain a sample for chemical testing by following the procedure established by our implied consent statute." *Id.* at 452–53.

The court of appeals rejected the defendant's argument. The court of appeals reasoned that "nothing in the statute" makes it "the exclusive means by which law enforcement can obtain chemical testing of persons suspected of OWI." *Id.* at 454. To the contrary, "the explicit language of chapter 321J . . . indicate[s] the implied consent statute is not the exclusive means by which law enforcement may obtain chemical testing." *Id.* Specifically, section 321J.18 provides that chapter 321J "does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage or a controlled substance or other drug." *Id.* (quoting Iowa Code § 321J.18). Relying on the statutory text and this court's decisions in *Oakley* and *Demaray*, the court of appeals concluded "the State's ability to obtain chemical testing is not limited to the provisions of chapter 321J so long as the procedure utilized conforms to constitutional requirements." *Id.* at 454–55.

The district court erred in failing to adhere to *Frescoln. Frescoln* was a published decision of the court of appeals, and the district court was duty-bound to apply it. *See Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121–22 (Iowa 1973) (en banc) (explaining that trial courts are duty bound to follow controlling precedent); Randy J. Kozel, *Settled Versus Right: A Theory of Precedent* 19 (2017) [hereinafter Kozel, *Settled Versus Right*] (explaining that "vertical precedents are conclusive wherever they apply[:] . . . [t]he lower courts have no authority to depart from [vertical precedents]," and that lower courts are not "allowed to make predictions" about whether a higher court will overturn its precedent (emphasis omitted)).

B.

While the district court was required to apply *Frescoln*, this court is not. *See* Kozel, *Settled Versus Right* at 20 (stating that higher courts are "not bound by the decisions of lower court judges" and that "[l]ower courts influence higher courts by being persuasive"). Laub argues this court should overrule *Oakley* and *Frescoln*, and he argues that *Demaray* should be limited to its facts. We are disinclined to overrule these decisions or artificially limit them. "Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015). There is no compelling reason to overrule or artificially limit these decisions because, in our view, *Oakley*, *Demaray*, and *Frescoln* were correctly decided.

Laub makes numerous statutory arguments in support of his contention that chapter 321J is the exclusive means by which a peace officer can collect a bodily specimen from a motorist. Laub's statutory arguments mostly beg the question—they assume that chapter 321J applies. For example, Iowa Code section 321J.9(1) provides that "[i]f a person refuses to submit to the chemical

testing, a test shall not be given." Laub assumes that this provision applies here and precludes the officer from obtaining a search warrant or at least gives Laub the right to refuse execution of the search warrant. In *State v. Hitchens*, we explained that this statutory provision prohibits an officer from using a warrant to obtain a bodily specimen after the officer had invoked the statutory implied consent procedure and after the motorist had refused consent. 294 N.W.2d 686, 687 (Iowa 1980). But the statutory right of refusal applies "only when the implied consent procedures are invoked." *Demaray*, 704 N.W.2d at 64; *see also Frescoln*, 911 N.W.2d at 453–54 ("[I]f a driver refuses a chemical test after being offered one under the implied consent law, the officer cannot then go 'outside the statute' to obtain a warrant for chemical testing." (quoting *Hitchens*, 294 N.W.2d at 687)). Here, Deputy McCrea did not invoke the statutory implied consent procedures, and section 321J.9 is thus inapplicable. *See Frescoln*, 911 N.W.2d at 453–54 (stating the right of refusal under chapter 321J was inapplicable because the officer "never invoked the implied consent procedures").

The Minnesota Court of Appeals reached a similar conclusion regarding its implied consent law. *See State v. Wood*, 922 N.W.2d 209, 216 (Minn. Ct. App. 2019). It reasoned that the implied consent law and the right to refuse testing apply only when the statute is invoked. *Id.* When a peace officer does not invoke implied consent, nothing precludes an officer from obtaining and executing a search warrant for bodily specimens:

> Furthermore, nothing in the implied-consent law requires an officer to invoke the implied-consent law in any particular arrest. . . . Moreover, nothing in the implied-consent law prevents an officer from obtaining and executing a search warrant that will yield a sample of bodily fluid that may be tested. Accordingly, the structure of [the implied consent statute] and the context in which the implied-consent law operates make clear that the statutory provision on which Wood relies applies only if the implied-consent law has been invoked, which occurs only if an officer reads the implied-consent advisory to a driver who has been arrested for [OWI].

*Id.*

Laub's other statutory arguments that an officer is required to invoke implied consent in all circumstances as the exclusive means of criminal investigation runs headlong into the text of the statute. The legislature has not vested the state with "unfettered ability to invoke the implied consent law." *State v. Palmer*, 554 N.W.2d 859, 861 (Iowa 1996). Instead, the legislature has "placed limitations on the circumstances under which" an investigating officer can invoke the statutory implied consent procedure. *Id.* Laub concedes this is correct, recognizing that "[t]here are prerequisites that must be met before a sample can be legally requested."

An investigating peace officer can invoke the implied consent law only when the officer has "reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A" and when at least one of seven specific conditions exist:

> *a.* A peace officer has lawfully placed the person under arrest for violation of section 321J.2.
>
> *b.* The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
>
> *c.* The person has refused to take a preliminary breath screening test provided by this chapter.
>
> *d.* The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.
>
> *e.* The preliminary breath screening test was administered to a person operating a commercial motor vehicle as defined in section 321.1 and it indicated an alcohol concentration of 0.04 or more.
>
> *f.* The preliminary breath screening test was administered and it indicated an alcohol concentration less than the level prohibited by section 321J.2, and the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.

> *g.* The preliminary breath screening test was administered and it indicated an alcohol concentration of .02 or more but less than .08 and the person is under the age of twenty-one.

Iowa Code § 321J.6(1). These restrictions "serve three purposes: (1) to protect the health of the person submitting to the test; (2) to guarantee the accuracy of the test; and (3) to protect citizens from indiscriminate testing or harassment." *Palmer*, 554 N.W.2d at 861. The restrictions are necessary when chemical testing is done "without the protection of a search warrant." *Id.*

Laub's interpretation of the statute upends the statutory limitation on a peace officer's statutory authority to invoke the implied consent procedure and instead imposes a duty on a peace officer to invoke implied consent as the exclusive means of investigation even when the requisite conditions are not met. This is contrary to the statutory text, which was meant to restrain an officer from invoking the statutory implied consent procedure rather than to compel the officer to do so. Just consider the facts of this case. None of the seven conditions authorizing Deputy McCrea to invoke the implied consent procedure were triggered in this case. Of note, Deputy McCrea did not arrest Laub for a violation of section 321J.2 until after obtaining the result of the chemical breath test. *Cf.* Iowa Code § 321J.6(1)(*a*). Even though Deputy McCrea was not statutorily authorized to invoke the statutory implied consent procedure prior to obtaining a warrant, Laub contends he was statutorily required to do so. Laub's position is untenable.

Posing a further textual problem for Laub is section 321J.18. That provision provides that chapter 321J "does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage or a controlled substance or other drug, including the results of chemical tests of specimens of blood, breath, or urine." *Id.* § 321J.18. This provision demonstrates "the implied consent statute is not

the exclusive means by which law enforcement may obtain chemical testing." *Frescoln*, 911 N.W.2d at 454.

Laub's interpretation of the statute is also at odds with constitutional search and seizure jurisprudence. The relevant cases show a strong preference for a peace officer conducting a criminal investigation to obtain a search warrant for the collection of evidence. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) (explaining the "Fourth Amendment's strong preference for searches conducted pursuant to a warrant"); *State v. Ingram*, 914 N.W.2d 794, 816 (Iowa 2018) ("Our recent cases repeatedly embrace what can only be characterized as a strong warrant preference interpretation of article I, section 8."). Despite this preference, our caselaw also has approved of the warrantless collection of evidence based on, among other things, "exigent circumstances, searches incident to arrest, automobile searches, and consent." *State v. McGee*, 959 N.W.2d 432, 445 (Iowa 2021). "Consent to chemical testing obtained under the implied consent statute falls under the voluntary consent exception to the warrant requirement." *Frescoln*, 911 N.W.2d at 453. Properly understood, chapter 321J is a comprehensive statutory scheme to implement the consent exception to the constitutional preference for search warrants and not a mechanism to displace the constitutional use of search warrants. *See State v. Smith*, 134 S.W.3d 35, 40 (Mo. Ct. App. 2003) ("The Missouri Implied Consent Law was enacted to codify the procedures under which a law enforcement officer could obtain bodily fluids for testing by consent without a search warrant. . . . Because it is directed only to warrantless tests authorized by law enforcement officers, it does not restrict the state's ability to apply for a search warrant to obtain evidence in criminal cases . . .").

As the Colorado Supreme Court recently explained in a similar case, use of a search warrant to collect and test bodily specimens is an additional investigative tool wholly outside the implied consent law:

> Therefore, the Expressed Consent Statute's silence does not reveal ambiguity. Instead, it simply reflects the limited scope of the statute, which by its terms applies to drivers who have impliedly consented (and then in some cases refused to cooperate). While warrants are typically a requirement for a reasonable search under the Fourth Amendment, statutory consent functions as a distinct way to collect blood samples under the consent exception to that requirement, Conversely, because consent is an exception to the warrant requirement, when police have a warrant, consent is immaterial. . . . [W]arrants are irrelevant to the statutory issue of consent; by definition, a valid warrant functions as an entirely independent constitutional ground for conducting a search.

*People v. Raider*, 516 P.3d 911, 917–18 (Colo. 2022) (en banc) (citations omitted).

Finally, Laub's interpretation of section 321J is wholly at odds with the purpose of the statute. The stated purpose of the implied consent law was to "aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition." 1963 Iowa Acts ch. 114, § 37. The law expanded the tools available to peace officers to investigate and enforce drunk driving laws. "To interpret the provisions of the chapter as limitations on the admissibility of evidence in a prosecution for [OWI], as [the] defendant would have us, would create a new handicap to the law enforcement the chapter was designed to aid." *Charlson*, 154 N.W.2d at 832. "[P]roscribing the use of a search warrant as a means of obtaining evidence of a driver's intoxication 'would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them.' " *Metzner v. State*, 462 S.W.3d 650, 657 (Ark. 2015) (quoting *Brown v. State*, 774 N.E.2d 1001, 1007 (Ind. Ct. App. 2002)). "We conclude that the implied consent law is designed to facilitate, not impede, the gathering of chemical test evidence

in order to remove drunk drivers from the roads. It is not designed to give greater fourth amendment rights to an alleged drunk driver than those afforded any other criminal defendant." *State v. Zielke*, 403 N.W.2d 427, 428 (Wis. 1987).

## C.

We have considered each of Laub's statutory arguments, whether or not explicitly discussed herein, and find them without merit. Every state has a statutory implied consent law. *See Birchfield v. North Dakota*, 579 U.S. 438, 444 (2016). Most states interpreting similar laws have considered the same or similar statutory arguments Laub advances here and have concluded that the statutory implied consent procedure does not preclude peace officers from obtaining a search warrant to collect and test bodily specimens. *See State v. Evans*, 378 P.3d 413, 420 (Alaska Ct. App. 2016); *Metzner*, 462 S.W.3d at 656–57; *State v. Geiss*, 70 So. 3d 642, 647 (Fla. Dist. Ct. App. 2011); *Brown*, 774 N.E.2d at 1003; *State v. Green*, 91 So. 3d 315, 316–17 (La. Ct. App. 2012); *Smith*, 134 S.W.3d at 40; *State v. Minett*, 332 P.3d 235, 238 (Mont. 2014); *State v. Garnenez*, 344 P.3d 1054, 1058 (N.M. Ct. App. 2014); *State v. Chavez*, 767 S.E.2d 581, 585 (N.C. Ct. App. 2014); *Beeman v. State*, 86 S.W.3d 613, 615–16 (Tex. Crim. App. 2002) (en banc); *State v. Stone*, 728 S.E.2d 155, 168 (W. Va. 2012); *Zielke*, 403 N.W.2d at 428. We find these decisions persuasive on the questions presented in this case and in accord with this court's and the court of appeals' prior decisions on this issue. We conclude the district court erred in holding that chapter 321J is the exclusive means of investigating a suspected OWI and precludes a peace officer from obtaining and executing a search warrant for the collection of bodily specimens.

## IV.

"[T]here is no common-law right to issue a search warrant . . . ." *Meier v. Sulhoff*, 360 N.W.2d 722, 726 (Iowa 1985) (en banc) (citations omitted). Search

warrants must be authorized, issued, and executed pursuant to statute. The district court held that Iowa Code chapter 808, which governs the application, issuance, and execution of search warrants, does not authorize search warrants to collect and test bodily specimens. For the reasons expressed below, we disagree.

We begin with the language of the statute at issue. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("Any interpretive inquiry thus begins with the language of the statute at issue."). The Code defines a "search warrant" to be "an order in writing, in the name of the state, signed by a magistrate, and directed to a peace officer commanding the officer to search a person." Iowa Code § 808.1(2). The search warrant must describe "the person . . . to be searched." *Id.* § 808.3(1). The warrant must command "that peace officer forthwith to search the named person." *Id.* § 808.4. In addition to authorizing search warrants to search persons, the Code authorizes the seizure of "any other property relevant and material as evidence in a criminal prosecution." *Id.* § 808.2(4). "Property" "includes personal and real property." *Id.* § 4.1(24). "Personal property" "include[s] money, goods, chattels, evidences of debt, and things in action." *Id.* § 4.1(21). Section 4.1(21)'s use of the word "includes" in the definition of "personal property" shows the enumerated list of personal property is illustrative and not exhaustive. *See Am. Eyecare v. Dep't of Hum. Servs.*, 770 N.W.2d 832, 837 (Iowa 2009) ("Generally, the 'verb "includes" imports a general class, some of whose particular instances are those specified in the definition.'" (quoting *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 n.1 (1934))).

The Code's authorization to issue search warrants commanding the search of persons and the collection of personal property and evidence material to criminal prosecutions implies the authority to seize anything of evidentiary value from the person searched, including bodily specimens. *See, e.g., United States v.*

*Kriesel*, 720 F.3d 1137, 1144–45 (9th Cir. 2013) (holding that "the blood sample itself . . . and the genetic code contained within the blood sample" is property); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (holding urine samples were property), *overruled in part on other grounds by Demaree v. Pederson*, 887 F.3d 870 (9th Cir. 2018) (per curiam); *Geiss*, 70 So. 3d at 649 ("First, Geiss argues that blood is not 'property' within the meaning of the statute. We reject this argument, . . . 'property' does not exclude those substances that are naturally produced by the human body."); *People v. Marshall*, 244 N.W.2d 451, 457 n.23 (Mich. Ct. App. 1976) (stating that blood and hair samples were property or things that could be seized under warrant); *State v. Emerson*, 981 N.E.2d 787, 792 (Ohio 2012) ("[A] blood sample is not unlike other tangible property . . . ." (quoting *Wilson v. State*, 752 A.2d 1250, 1269 (Md. Ct. Spec. App. 2000))); *Gentry v. State*, 640 S.W.2d 899, 902–03 (Tex. Crim. App. 1982) (en banc) ("We are thus constrained to hold that, though 'blood' is not specifically itemized in Article 18.02, it is nonetheless an item of evidence to search for and to seize which a search warrant may issue . . . ."). "It only makes sense that the legislature would intend the term 'property' to broadly include the types of physical items that would routinely be seized in connection with a criminal investigation." *Geiss*, 70 So. 3d at 650.

The district court's contrary interpretation and construction of chapter 808 runs afoul of the general rule that when more than one statute bears on an issue, courts must attempt to harmonize the relevant statutes and not interpret or construe them to render one or more of the statutes inoperative. *See Kolzow v. State*, 813 N.W.2d 731, 736 (Iowa 2012) ("If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them." (quoting *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000) (en banc))); *Saydel Educ. Ass'n v. Pub. Emp.*

*Rels. Bd.,* 333 N.W.2d 486, 489 (Iowa 1983) (stating that courts should interpret statutes so that "no part will be inoperative or superfluous, void or insignificant" (quoting *City of Fort Dodge v. Iowa Pub. Emp. Rels. Bd.,* 275 N.W.2d 393, 397 (Iowa 1979))). Section 321J.10 provides that a refusal to consent "does not prohibit the withdrawal of a specimen for chemical testing pursuant to a search warrant" issued in an investigation of cases where "[a] traffic accident has resulted in a death or personal injury reasonably likely to cause death," and "[t]here are reasonable grounds to believe that one or more of the persons whose driving may have been the proximate cause of the accident was violating section 321J.2 at the time of the accident." Iowa Code § 321J.10(1). That section further provides that "[s]earch warrants may be issued under this section in full compliance with chapter 808." *Id.* § 321J.10(2). Under the district court's interpretation of the statute, however, chapter 808 cannot be used to obtain search warrants for bodily specimens. The district court's interpretation and construction of chapter 808 thus renders section 321J.10 wholly inoperative.

The district court's interpretation and construction of chapter 808 is also inconsistent with Iowa's precedents and the established practice of law enforcement officers in this state. Iowa's precedents have implicitly approved (and some have required) the use of search warrants to collect and test bodily specimens in criminal investigation of OWI cases. *See, e.g., State v. Pettijohn,* 899 N.W.2d 1, 38–39 (Iowa 2017) (holding that implied consent could not be invoked because the Iowa Constitution required a search warrant for chemical testing of breath in investigation of operating a boat while intoxicated), *overruled by State v. Kilby,* 961 N.W.2d 374 (Iowa 2021); *State v. Johnson,* 744 N.W.2d 340, 342 (Iowa 2008) ("[W]ithdrawal of a specimen of blood, breath, or urine for chemical testing is permitted over the individual's objection pursuant to a search warrant when a traffic accident has resulted in death or injury reasonably likely

to cause death . . . ."); *Stanford*, 474 N.W.2d at 576 (stating a bodily specimen "is subject to a search warrant"); *Hitchens*, 294 N.W.2d at 687 ("[B]lood samples taken pursuant to a valid warrant meet the reasonableness requirement of the fourth amendment."); *State v. Dewbre*, 987 N.W.2d 861, 867 (Iowa Ct. App. 2022) (affirming use of a search warrant to collect bodily specimens); *State v. Wenzel*, 987 N.W.2d 473, 482 (Iowa Ct. App. 2022) (affirming use of warrant authorizing collection of "blood, urine, and/or breath specimen").

We will not upset settled law and established practice with a novel interpretation of chapter 808. We conclude the district court erred in holding that chapter 808 does not authorize the issuance of search warrants for the collection of bodily specimens.

V.

The district court concluded there was an equal protection violation here, but its rationale was underdeveloped and unclear. The district court held that "[c]hoosing personal extra-legal routes for the sake of simplicity under color of law deprived Mr. Laub of . . . equal protection of the law under the Iowa and United States Constitutions." The district court further held that "[e]xclusion of evidence obtained upon such intentional violations is the legal, appropriate and just remedy via the exclusionary rule." We interpret the district court's order to encompass a ruling on the constitutionality of the implied consent statute and a ruling on Deputy McCrea's investigative decision to obtain and execute a search warrant.

The United States and Iowa Constitutions guarantee all persons the equal protection of the laws. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides that "[a]ll laws of a general nature shall have a

uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. This court's precedents hold that article I, section 6 means "similarly situated persons [should] be treated alike under the law." *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001) (en banc). At its core, the federal and state constitutional guarantees are meant to protect "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)).

When a litigant challenges a statute on equal protection grounds, "the first step in our equal protection analysis is to determine whether the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law." *State v. Treptow*, 960 N.W.2d 98, 104 (Iowa 2021). "This is a threshold test." *Id.* The threshold test was not satisfied in this case. Chapter 321J makes no distinctions between persons, let alone distinctions between similarly situated persons. The statutory implied consent procedure gives peace officers an additional tool to investigate OWI cases by vesting them with discretion to invoke the statutory implied consent procedure when the statutory prerequisites are satisfied, but all motorists are subject to the same law. Because the law makes no distinctions between classes of persons, the district court erred to the extent it held the implied consent statute violates the federal or state guarantee of equal protection of the laws.

To the extent the district court held that Deputy McCrea's exercise of discretion violated the federal or state guarantee of equal protection of the laws, the district court erred. "There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective,

individualized assessments." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). A peace officer investigating a suspected case of OWI is an example. In deciding whether to invoke the statutory implied consent procedure, obtain a search warrant, or proceed without consent or a search warrant, a peace officer must balance an array of individualized considerations in choosing how to investigate each case, including the location of the traffic stop, the time of day, the availability of a magistrate, the condition of the driver, the probability of obtaining consent, etc.

A statutory scheme that allows a peace officer to exercise investigative discretion, and a peace officer's exercise of that discretion, in and of itself, does not violate the federal or state constitutional guarantees of equal protection under the law. *See Pratt v. Helms*, 73 F.4th 592, 595 (8th Cir. 2023) ("[I]nvestigative decisions are generally left to the discretion of the executive branch."); *Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) ("[W]e conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *State ex rel. Miller v. DeCoster*, 596 N.W.2d 898, 904 (Iowa 1999) ("An equal protection analysis affords governmental bodies broad discretion in pursuing legitimate governmental interests."). Allowing an equal protection challenge to a peace officer's exercise of legitimate investigative choices, "even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist*, 553 U.S. at 604. "In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating

like individuals differently is an accepted consequence of the discretion granted." *Id.* at 603.

## VI.

The district court also held that Laub's federal and state rights to due process were violated when Deputy McCrea obtained and executed a search warrant to collect and test Laub's breath specimen. The district court held that "[c]hoosing personal extra-legal routes for the sake of simplicity under color of law deprived Mr. Laub of substantive and procedural due process . . . under the Iowa and United States Constitutions." We conclude the district court erred in holding that collection and testing of a breath specimen pursuant to a search warrant violated Laub's due process rights.

## A.

The United States and Iowa Constitutions guarantee to all persons due process of law. The Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Article I, section 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." Federal and state precedents hold that the entitlement to due process of law has substantive and procedural aspects. *See In re V.H.*, 996 N.W.2d 530, 539–42 (Iowa 2023) (discussing substantive and procedural due process claims).

## B.

Under the relevant precedents, a party can raise a substantive due process challenge to a statute. When a party raises a substantive due process challenge to a statute, "[t]he first step [in the legal analysis] is to 'identify the nature of the individual right involved' and determine whether that right is fundamental." *State v. Groves*, 742 N.W.2d 90, 92 (Iowa 2007) (quoting *In re Det. of Cubbage*, 671 N.W.2d 442, 446 (Iowa 2003)). "United States Supreme Court precedent

demands we craft 'a careful description of the asserted fundamental liberty interest.' " *Id.* (quoting *Chavez v. Martinez,* 538 U.S. 760, 775 (2003)). "Once we identify the nature of the right, the second step is to apply the appropriate test. If we determine the right is fundamental, then we will apply strict scrutiny." *Id.* at 93. "If we determine a fundamental right is not implicated, we apply a rational basis review." *Id.*

Before proceeding, it is important to clarify Laub's argument on appeal. There is no doubt that Laub has an interest in his "bodily integrity." *Missouri v. McNeely,* 569 U.S. 141, 148 (2013). But that interest is not absolute, and the use of a search warrant to obtain a bodily specimen to investigate a suspected OWI offense is a constitutional means for a peace officer to overcome that interest. *See id.* But Laub does not argue that the use of a search warrant, in and of itself, violates his right to due process. Instead, he makes a more subtle argument. He argues that due process requires an officer to invoke the statutory implied consent procedure and precludes an officer from obtaining a search warrant. Specifically, he argues that a due process concern arises "when government officials preclude a citizen from exercising a statutory right." The district court's suppression ruling rested on this same premise—that Laub had a statutory right "to have the substantive provisions of 321J applied to him."

Laub's argument—and the district court's holding—is predicated on a misunderstanding of the statute. It is true that a motorist has a statutory right to refuse testing once a peace officer invokes the statutory implied consent procedure and requests permission to test. *Hitchens,* 294 N.W.2d at 687–88 However, the statutory right of refusal applies "only when the implied consent procedures are invoked." *Demaray,* 704 N.W.2d at 64. Here, Deputy McCrea did not invoke the implied consent procedure, so no statutory right is even implicated.

Furthermore, it would be odd to characterize the statutory implied consent procedure as creating a right in favor of a motorist suspected of OWI. The statutory implied consent procedure was designed to provide law enforcement with additional tools to investigate and enforce OWI laws and reduce traffic fatalities. The law incents compliance with requests for chemical testing and disincents refusal through the means of license revocation and allowing evidence of refusal to be admitted at any trial. *See Hitchens*, 294 N.W.2d at 688 ("On the one hand the state recognizes a driver's 'right' to refuse testing, but on the other hand it extracts a penalty for exercising the right revocation of the driver's license. By striking this balance, the statute motivates drivers to take the test, but does so without resorting to physical compulsion. Loss of driving privileges appears to be the sanction the General Assembly selected for refusing a test."). We are unaware of any constitutional right, fundamental or otherwise, affording a motorist an opportunity to refuse consent to provide a bodily specimen for chemical testing on penalty of having one's license revoked or having one's refusal be admitted in a criminal trial. We decline to recognize such a constitutional right.

To the extent the district court held that Deputy McCrea's conduct—his exercise of discretion to obtain and execute a search warrant—violated Laub's right to substantive due process, the district court erred. A party can raise a substantive due process challenge to test the legality of government conduct. "When specific government conduct (as opposed to legislation) is alleged to have violated substantive due process, we typically apply the 'shocks the conscience' standard to assess the claim." *Lennette v. State*, 975 N.W.2d 380, 393–94 (Iowa 2022). "A substantive due process violation is not easy to prove . . . ." *Blumenthal Inv. Trs. v. City of West Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001). The claim "is reserved for the most egregious governmental abuses against liberty or

property rights, abuses that 'shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity.' " *Id.* (alteration and omissions in original) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 575 (N.J. 1996)).

A peace officer obtaining a search warrant in compliance with federal and state constitutional requirements to investigate suspected criminal activity in no way shocks the conscience or offends human dignity. To the contrary, the Supreme Court has explained that use of a search warrant to investigate OWI offenses is the constitutionally preferred method of investigation. *See McNeely*, 569 U.S. at 148 ("The importance of requiring authorization by a 'neutral and detached magistrate' before allowing a law enforcement officer to 'invade another's body in search of evidence of guilt is indisputable and great.' " (quoting *Schmerber v. California*, 384 U.S. 757, 770 (1966))).

C.

The district court also erred in holding that Deputy McCrea's use of a warrant to obtain and test a breath specimen violated Laub's right to procedural due process. Even if the statutory implied consent procedure was the exclusive means of criminal investigation allowed in OWI cases, which it is not, "[t]he government's failure to comply with a statute or ordinance does not necessarily establish a due process violation." *Stogdill v. City of Windsor Heights*, 991 N.W.2d 719, 731 (Iowa, 2023); *see also Womack v. Carroll County*, 840 F. App'x 404, 407 (11th Cir. 2020) (per curiam) ("[T]he mere violation of a state statute outlining a required procedure does not necessarily equate to a due process violation."); *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 568 (Iowa 2019) ("A mere violation of a statute does not give rise to a due process violation . . . ."). Instead, the party raising the challenge must show that the state failed to provide the minimum process the Federal and State Constitutions require.

Deputy McCrea's decision to forego the statutory implied consent procedure and obtain a search warrant did not violate Laub's right to procedural due process. This court has explained statutory implied consent procedures are "not mandated by the due process . . . provisions of the United States Constitution." *Kilby*, 961 N.W.2d at 378 (quoting *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981)). More recently, in *State v. Baraki*, this court explained that while "[t]he implied consent law . . . gives the potentially intoxicated driver a choice[,] . . . [t]he choice is not *constitutionally* required for a breath test." 981 N.W.2d 693, 697 (Iowa 2022).

In *State v. Dewbre*, the court of appeals concluded it was "clear that implied-consent procedures are not the exclusive means for testing." 987 N.W.2d at 865. The *Dewbre* court rejected the defendant's argument that the officer's decision to obtain a warrant rather than invoke the implied consent procedure violated the defendant's right to due process: "By obtaining a warrant, the officer provided more safeguards to Dewbre than if the officer had invoked implied consent. Implied consent is invoked based on the judgment made by the officer. In contrast, a warrant is issued based on probable cause findings of a neutral and detached third party—the judicial officer issuing the warrant." *Id.* at 865–66 (citation omitted). The court found "unpersuasive" the defendant's argument that her due process rights were violated by providing her with more process and more judicial oversight than Iowa Code chapter 321J requires. *Id.* at 865–66. We agree.

## VII.

For the foregoing reasons, we reverse in all respects the district court's order granting Laub's motion to suppress evidence, and we remand this matter to the district court for further proceedings.

**REVERSED AND REMANDED.**