# IN THE COURT OF APPEALS OF IOWA

No. 16-2043
Filed December 6, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**HUNTER NATHANIAL FRESCOLN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Cynthia M. Moisan,

District Associate Judge.


        Hunter Frescoln appeals the judgment and sentence entered following his

conviction for operating while intoxicated (OWI), second offense.  **AFFIRMED.**


        Robert G. Rehkemper III of Gourley, Rehkemper & Lindholm, P.L.C., West

Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Jean C. Pettinger and Timothy M.

Hau, Assistant Attorneys General, for appellee.


        Heard by Danilson, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Hunter Frescoln appeals the judgment and sentence entered following his conviction for operating while intoxicated (OWI), second offense. He challenges the district court order denying his motion to suppress the results of a chemical test showing his blood alcohol content was in excess of the legal limit.

### I. Background Facts and Proceedings.

Ankeny Police Officer Jake Cusack initiated a traffic stop of the vehicle Frescoln was driving on the night of August 12, 2016. During the stop, Officer Cusack observed signs that Frescoln was intoxicated, and Frescoln admitted he had consumed two beers. While Frescoln performed field sobriety tests, Officer Cusack observed more signs that Frescoln was intoxicated. Frescoln refused to submit to a preliminary breath test. Officer Cusack transported Frescoln to the Pleasant Hill Police Department and secured a search warrant to seize a sample of Frescoln's blood for chemical testing, which showed Frescoln's blood alcohol content was .093.

The State charged Frescoln with OWI, third offense. Frescoln moved to suppress the results of the chemical test, alleging the State violated his rights under Iowa Code chapter 321J (2016) and the Iowa Constitution. The district court denied the motion following a hearing. Frescoln waived his right to a jury trial, and the case was submitted to the court on the minutes of evidence. The court found Frescoln guilty of second-offense OWI and sentenced him to a period of not more than two years of incarceration with all but thirty days of the sentence suspended.

### II. Implied Consent Statute.

The first question before us is whether a law enforcement officer has the option of obtaining a sample for chemical testing by either invoking the implied consent statute or obtaining a warrant. Frescoln asserts the Iowa legislature removed the option of obtaining a chemical sample by warrant when it enacted our implied consent laws. Under Frescoln's interpretation, an officer may only obtain a sample for chemical testing by following the procedure established by our implied consent statute.

We review the district court's interpretation of our implied consent statute for the correction of errors at law. *See State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016). We affirm if the district court's ruling correctly applied the law and substantial evidence supports its fact findings. *See id.*

The United States and Iowa Constitutions prohibit unreasonable searches. *See State v. Moriarty*, 566 N.W.2d 866, 868 (Iowa 1997). "A warrantless search is presumed unreasonable." *Id.* To conduct a valid search without a warrant, it must fall under one of the recognized exceptions to the warrant requirement. *See id.* An exception to the warrant requirement exists when a person consents to allow the search. *See id.* However, obtaining a search warrant is the preferred method for conducting a constitutionally permissible search. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968) ("We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure . . . ."); *State v. Ochoa*, 792 N.W.2d 260, 285 (Iowa 2010) ("We have also generally endorsed the warrant-preference requirement."). As our supreme court recently affirmed in *State v. Pettijohn*, 899 N.W.2d 1, 22-23

(Iowa 2017), "Whenever practicable, the state should obtain a warrant prior to conducting a search."

Our legislature enacted Iowa's implied consent law "to protect public safety and eliminate intoxicated driving from Iowa roads." *State v. McIver*, 858 N.W.2d 699, 704 (Iowa 2015). Under the law, Iowa drivers have impliedly consented to chemical testing when there are "reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A." Iowa Code § 321J.6(2); *accord McIver*, 858 N.W.2d at 705. The implied consent law provides an incentive for drivers to consent to chemical testing by subjecting those who refuse to voluntarily provide a sample for testing to license revocation. *See McIver*, 858 N.W.2d at 704-05. It does not, however, require a driver to submit to chemical testing. *See id.* at 704. Consent to chemical testing obtained under the implied consent statute falls under the voluntary consent exception to the warrant requirement. *See State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991) (finding Stanford voluntarily consented to chemical testing after reading implied consent advisory); *see also State v. Palmer*, 554 N.W.2d 859, 861 (Iowa 1996); *cf. Pettijohn*, 899 N.W.2d at 29 (analyzing whether, under the totality of the circumstances, the defendant consented to submit to chemical testing pursuant to Iowa Code chapter 462A—Iowa's implied consent statute for boating—after holding the chapter does not automatically permit warrantless searches consistent with the Iowa Constitution). Therefore, it is imperative that the decision to provide a sample for chemical testing be reasoned and informed. *See State v. Overbay*, 810 N.W.2d 871, 876 (Iowa 2012).

In *State v. Higgins*, 294 N.W.2d 686, 687-88 (Iowa 1980), the supreme court held that if a driver refuses a chemical test after being offered one under the implied consent law, the officer cannot then go "outside the statute" to obtain a warrant for chemical testing. It is undisputed that Frescoln was never presented with an opportunity, through the invocation of implied consent or otherwise, to consent or refuse evidentiary chemical testing. The *Higgins* decision is distinguishable because here, Officer Cusack never invoked the implied consent procedures and Frescoln never refused a chemical test.

Frescoln argues the procedures outlined in chapter 321J are the only means by which law enforcement may obtain chemical testing of an OWI suspect. He attempts to construe the statute in a manner making it the exclusive means by which law enforcement can obtain chemical testing of persons suspected of OWI. However, nothing in the statute expressly requires this finding. "We do not read a requirement into a statutory scheme when none exists because '[i]t is not our province to write such a requirement into the [implied consent] statute.'" *State v. Fischer*, 785 N.W.2d 697, 705-06 (Iowa 2010) (alteration in original) (quoting *Gottschalk v. Sueppel*, 140 N.W.2d 866, 872 (Iowa 1966)).

The explicit language of chapter 321J and our supreme court's prior decisions indicate the implied consent statute is not the exclusive means by which law enforcement may obtain chemical testing. The final provision of the chapter states:

> This chapter does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage or a controlled substance or other drug, including the results of chemical tests of specimens of blood,

breath, or urine obtained more than two hours after the person was operating a motor vehicle.

Iowa Code § 321J.18. Our supreme court has said this provision "expresses our legislature's intent that the chapter 'not . . . be construed as limiting the introduction of competent evidence bearing on whether an accused was intoxicated.'" *State v. Demaray*, 704 N.W.2d 60, 64 (Iowa 2005) (quoting *State v. Charlson*, 154 N.W.2d 829, 833 (Iowa 1967)). In *Demaray*, a defendant consented to release his medical records—including the results of a chemical test performed by the hospital for purposes of treatment—to a law enforcement officer. *See id.* at 61. Although the chemical test was not obtained according to the procedures set forth in chapter 321J, the supreme court held the results were not subject to suppression because the chapter is not the exclusive means by which the State can obtain chemical testing evidence from a defendant:

> [T]here is no reason to limit the scope of a medical records release by a defendant because the State *could have* invoked implied consent procedures. Such rationale is contrary to the legislative intent expressed in section 321J.18 for the implied consent statute not to limit other competent evidence of intoxication, including evidence of other tests.

*Id.* at 66 (emphasis added).

Our supreme court has also held that the procedure for obtaining a search warrant set forth in section 321J.10 "does not limit the State's authority to obtain a search warrant under the general search warrant provisions of Iowa Code chapter 808." *See State v. Oakley*, 469 N.W.2d 681, 682 (Iowa 1991). In *Oakley*, the defendant refused to submit to chemical testing for law enforcement but authorized a blood withdrawal for the purpose of independent testing. *Id.* The sample was retained by law enforcement but was not analyzed until three months after the

defendant's arrest, when the county attorney obtained a search warrant to seize the sample and have it tested. *See id.* Oakley sought to suppress the test results because the State "made no attempt to comply with the procedures and time limits of section 321J.10." *See id.* In rejecting this argument, the supreme court noted that "section 321J.10(2) expressly provides that search warrants may be obtained either under the limited circumstances of section 321J.10(3) or in accordance with chapter 808," concluding, "The legislature obviously did not intend for chapter 321J to preempt chapter 808." *Id.* at 683. Following *Oakley*, the court has also held the results of a chemical test conducted on a sample drawn by hospital personnel for the purpose of diagnostic treatment and obtained by law enforcement one month later pursuant to a search warrant were admissible. *See State v. Rains*, 574 N.W.2d 904, 913-14 (Iowa 1998), *overruled on other grounds by State v. Williams*, 895 N.W.2d 856 (Iowa 2017).

In accordance with the above, we find the State's ability to obtain chemical testing is not limited to the provisions of chapter 321J so long as the procedure utilized conforms to constitutional requirements. Adhering to the warrant requirement is the best means upon which to conform to the constitutional protections from unreasonable searches and seizures. Because Officer Cusack obtained a valid warrant for chemical testing, the results of Frescoln's chemical testing are admissible.[1]

---

[1] Frescoln alleges that the equal protection clause of the Iowa Constitution compels a finding that the implied consent procedure applies to all individuals investigated for OWI. Although Frescoln argued at the suppression hearing that the implied consent law must apply to every individual in order to prevent indiscriminate chemical testing, the district court did not specifically address any equal protection argument in denying the motion to suppress. Accordingly, the issue is not preserved for appeal. *See State v. Mitchell*, 757

### III. The Search Warrant.

Frescoln next argues the district court erred in denying his motion to suppress because law enforcement exceeded the scope of the search warrant by testing the blood sample obtained. He argues that although the warrant allowed Officer Cusack to obtain a sample of his blood, it never authorized the officer to perform chemical testing on that specimen.

We review the constitutionality of a search de novo. *See State v. White*, 887 N.W.2d 172, 175 (Iowa 2016). De novo review requires an independent evaluation of the record. *See id.* Although we defer to the district court's fact findings, we are not bound by them. *See id.*

A general search warrant is unconstitutional. *State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995) (citations omitted). Instead, a warrant "must describe with particularity the items to be seized." *State v. Hall*, 235 N.W.2d 702, 717 (Iowa 1975). But the requirements are practical, not abstract, and "[e]laborate specificity is not required." *See State v. Bakker*, 262 N.W.2d 538, 545 (Iowa 1978). "A description which points out or identifies the place to be searched with such reasonable certainty as will obviate any mistake in locating it is all the Constitution or statute requires." *State v. Moore*, 101 N.W. 732, 733 (Iowa 1904). We construe the language of the warrant "in a commonsense manner, resolving doubtful cases in favor of their validity." *State v. Angel*, 893 N.W.2d 904, 911 (Iowa 2017) (quoting *State v. Sykes*, 412 N.W.2d 578, 581 (Iowa 1987)). In other words, there is no requirement that a "hypertechnical, perfectly accurate description must be

---

N.W.2d 431, 435 (Iowa 2008) (holding an issue not ruled on by the district court is not preserved for appeal).

provided," but rather the description in the warrant need only be "sufficiently definite to enable the searcher to identify the persons, places or things the magistrate has previously determined should be searched or seized." *Thomas*, 540 N.W.2d at 662 (citations omitted).

The warrant issued states: "You are hereby commanded to take a specimen of said person and to take such specimens into custody, and to bring a list of seized specimens before me at my office." The warrant further describes the "specimen" as "[a] blood, urine, and/or breath specimen from [Frescoln]." The warrant then states that the specimen was sought because "[o]fficers have probable cause to believe that a traffic violation under Iowa Code § 321J.2 has occurred and the specimen[] sought []is relevant to a criminal investigation into a violation of Iowa Code § 321J.2."

In denying Frescoln's motion to suppress, the district court found "the testing of the blood sample in this case did not exceed the scope of the warrant." We agree. Although the warrant does not explicitly state that the blood sample would be subject to chemical testing, the stated reason for obtaining the blood sample was its relevance to an OWI investigation. The best practice is to state the purpose for requesting the sample on the warrant. However, a commonsense reading of the warrant implies the blood sample would be subjected to chemical testing. *See State v. Martines*, 355 P.3d 1111, 1116 (Wash. 2015) (holding a warrant authorizing extraction of a blood sample to obtain evidence the defendant was driving while under the influence necessarily authorizes testing of that sample for evidence of the suspected crime).

Furthermore, though the issue has not been decided in Iowa, we note that other courts have held that a defendant loses a privacy expectation in blood after its lawful removal from the body, and therefore, any testing of that blood does not violate the constitutional protections from unreasonable searches and seizures. *See United States v. Snyder*, 852 F.2d 471, 473-74 (9th Cir. 1988) (holding that "so long as blood is extracted incident to a valid arrest based on probable cause to believe that the suspect was driving under the influence of alcohol, the subsequent performance of a blood-alcohol test has no independent significance for fourth amendment purposes, regardless of how promptly the test is conducted"); *State v. Fawcett*, 877 N.W.2d 555, 561 (Minn. Ct. App. 2016) ("Once a blood sample has been lawfully removed from a person's body, a person loses an expectation of privacy in the blood sample, and a subsequent chemical analysis of the blood sample is, therefore, not a distinct Fourth Amendment event."); *People v. King*, 663 N.Y.S.2d 610, 614 (N.Y. App. Div. 1997) ("It is also clear that once a person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample. Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of a defendant's person."); *see also* Andrei Nedelcu, *Blood and Privacy: Towards A "Testing-As-Search" Paradigm Under the Fourth Amendment*, 39 Seattle U. L. Rev. 195, 201 (Fall 2015) ("[N]ational search and seizure jurisprudence is largely in agreement: No express judicial authorization is needed to analyze a suspect's blood (or any other biological sample) once it has already been lawfully procured."). Because the

warrant limits the purpose of the testing in this case, we take no position on the question whether a defendant would retain any expectation of privacy in a blood sample seized under a search warrant.

Because we find the search warrant here provided for chemical testing of the blood sample, we conclude Frescoln's constitutional rights have not been violated. We affirm the order denying Frescoln's motion to suppress the results of the chemical testing.

**AFFIRMED.**