

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1070-19

### ROBERT LEE CRIDER, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### KERR COUNTY

YEARY, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, NEWELL, KEEL, and SLAUGHTER, JJ., joined. NEWELL, J., filed a concurring opinion in which HERVEY, RICHARDSON, and SLAUGHTER, JJ., joined. WALKER, J., filed a dissenting opinion.

### O P I N I O N

A sample of Appellant's blood was lawfully extracted pursuant to a search warrant which alleged probable cause to believe he had been driving while intoxicated. The warrant, however, did not also expressly authorize the chemical testing of the extracted blood to determine his blood-alcohol concentration. This petition for discretionary review calls upon us now to examine whether introduction of evidence of the result of the chemical testing at Appellant's trial, in the absence of any explicit authorization for such testing in

the search warrant (or in a separate search warrant), violated his Fourth Amendment rights. We hold that it did not, and we therefore affirm the judgment of the court of appeals.

## I.        Background

Following a citizen's 9-1-1 report describing Appellant's erratic driving as well as the location where he eventually parked, a Kerrville police officer found Appellant sitting alone in his vehicle exactly where he had been reported to be. The officer noticed that Appellant exhibited a strong odor of alcohol, glassy and bloodshot eyes, an unsteady gait, and slow, slurry speech. When Appellant would not submit to field sobriety testing because of claims of recent injuries, the officer conducted a horizontal gaze nystagmus test to look for signs of intoxication. Appellant exhibited all six signs of intoxication that are revealed through that test. The officer then arrested Appellant and sought a search warrant for extraction of his blood, which was granted. But the search warrant did not explicitly authorize the chemical testing of Appellant's blood. Chemical testing of the blood sample was nevertheless conducted, and it revealed an alcohol-concentration level of .19.

Appellant did not contest the validity of the search warrant insofar as it authorized the extraction of his blood. *See Crider v. State*, No. 04-18-00856-CR, 2019 WL 4178633, at *1 (Tex. App.—San Antonio Sept. 4, 2019) (mem. op., not designate for publication) ("Crider does not challenge the existence of probable cause to support the blood draw warrant."). He did challenge, in a motion to suppress evidence, however, the introduction of evidence of the results of chemical testing for his blood-alcohol concentration. The trial court denied his motion to suppress, and on appeal Appellant argued that the introduction of his blood-alcohol concentration test result was error under this Court's recent opinion in *State v. Martinez*, 570 S.W.3d 278 (Tex. Crim. App. 2019).

In *Martinez*, this Court recently reiterated what it had held in previous opinions: that the chemical testing of blood constitutes a separate and discrete invasion of privacy for Fourth Amendment purposes from the physical extraction of that blood. *Id*. at 290; *see also State v. Huse*, 491 S.W.3d 833, 840 (Tex. Crim. App. 2016) ("[W]hen the State itself extracts blood from a DWI suspect, and when it is the State that conducts the subsequent blood alcohol analysis, two discrete 'searches' have occurred for Fourth Amendment purposes."); *State v. Hardy*, 963 S.W.2d 516, 523 (Tex. Crim. App. 1997) ("Where the drawing of blood is instigated by the government, a subsequent analysis of the blood by government agents also constitutes an invasion of a societally recognized expectation of privacy.") (citing *Skinner v. Ry. Labor Exec.'s Ass'n.*, 489 U.S. 602, 616 (1989)).

Appellant argued that this necessarily means that he may insist that, before that chemical testing may occur, the State must obtain a warrant expressly authorizing that test, or else identify an exception to the Fourth Amendment's ordinary preferences for search warrants. *Crider*, 2019 WL 4178633, at *2. While acknowledging our holding that blood testing involves a discrete invasion of privacy under the Fourth Amendment, the San Antonio court of appeals held that this did not require a separate and express authorization of chemical testing in a search warrant that already authorizes extraction of blood for that purpose. *See id*. ("[W]e reasonably can assume that where the police seek and obtain a blood draw warrant in search of evidence of intoxication, the blood drawn pursuant to the warrant will be tested and analyzed for that purpose.").

Other courts of appeals in Texas have reached similar conclusions. *See Hyland v. State*, 595 S.W.3d 256, 261 (Tex. App.—Corpus Christi–Edinburg 2019, no. pet.) (op. on remand) ("[U]nlike in *Martinez*, the search here was not warrantless."); *State v. Staton*, ___

S.W.3d \_\_\_, 2020 WL 1503125, at \*3 (Tex. App.—Dallas Mar. 3, 2020, no pet. h.) ("[C]ommon sense dictates that blood drawn for a specific purpose will be analyzed for that purpose and no other.") (quoting *Martinez*, 570 S.W.3d at 290); *Jacobson v. State*, \_\_\_ S.W.3d \_\_\_, 2020 WL 1949622, at \*5 (Tex. App.—Fort Worth Apr. 23, 2020) ("[T]he Fourth Amendment does not require the State to obtain a second warrant to test a blood sample that was seized based on probable cause that a person was driving while intoxicated."). And we do too.

## II.    Analysis

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). A neutral magistrate who has approved a search warrant for the extraction of a blood sample, based upon a showing of probable cause to believe that a suspect has committed the offense of driving while intoxicated, has necessarily also made a finding of probable cause that justifies chemical testing of that same blood. Indeed, that is the purpose of the blood extraction. This means that the constitutional objective of the warrant requirement has been met: the interposition of a neutral magistrate's judgment between the police and the citizen to justify an intrusion by the State upon the citizen's legitimate expectation of privacy. *See State v. Villarreal*, 475 S.W.3d 784, 795–96 (Tex. Crim. App. 2014) (op. on orig. subm.) (citing *Johnson v. United States*, 333 U.S. 10, 13–14 (1948), for the proposition that the purpose of the Fourth Amendment's warrant requirement is to provide a neutral arbiter between the police and citizens to determine whether probable cause exists to justify a police intrusion). Whether we say the warrant that justifies

extraction of the blood also, by necessary implication, justifies chemical testing,[1] or we simply acknowledge that a magistrate's finding of probable cause to extract the blood for chemical testing necessarily constitutes a finding of probable cause also to conduct the chemical test for intoxicants, is of no moment. However we choose to characterize it, the chemical testing of the blood, based upon a warrant that justifies the extraction of blood for that very purpose, is a reasonable search for Fourth Amendment purposes.

As all the courts of appeals to have addressed the question so far have discerned, the facts of *Martinez* are distinguishable. *See Crider*, 2019 WL 4178633, at *6; *Hyland*, 595 S.W.3d at 260–61; *Staton*, 2020 WL 1503125, at *2–3; *Jacobson*, 2020 WL 1949622, at *5. There, it was not the State that extracted the blood in the first instance. Instead, the State obtained the already-extracted blood sample from a treating hospital and, without a magistrate's finding of probable cause, had that blood sample tested for intoxicants. *Martinez*, 570 S.W.3d at 281. Having previously acknowledged that a chemical test conducted at the behest of the State constitutes a discrete and separate invasion of a legitimate expectation of privacy, we held that the warrantless test was unconstitutional. *Id*. at 292.

---

[1] *See Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976) ("[I]n interpreting affidavits *and search warrants*, magistrates and courts must do so in a common sense and realistic fashion and avoid hypertechnical analysis.") (emphasis added); *Long v. State*, 132 S.W.3d 443, 448 (Tex. Crim. App. 2004) ("[W]hen courts examine the description of the place to be searched to determine the warrant's scope, they follow a common sense and practical approach, not a 'Procrustean' or overly technical one."); *see also State v. Martines*, 355 P.3d 1111, 1115 (Wa. 2015) ("A warrant authorizing a blood draw necessarily authorizes blood testing, consistent with and confined to the finding of probable cause."); *State v. Frescoln*, 911 N.W.2d 450, 456 (Iowa Ct. App. 2017) ("Although the warrant does not explicitly state that the blood sample would be subject to chemical testing, the stated reason for obtaining the blood sample was its relevance to an [Operating While Intoxicated] investigation. The best practice is to state the purpose for requesting the sample in the warrant. However, a commonsense reading of the warrant implies the blood sample would be subjected to chemical testing.").

Here, the State obtained the blood sample by way of a magistrate's determination that probable cause existed to justify its seizure—for the explicit purpose of determining its evidentiary value to prove the offense of driving while intoxicated. That magistrate's determination was sufficient in this case to justify the chemical testing of the blood. And this is so, we hold, even if the warrant itself did not expressly authorize the chemical testing on its face.

This holding is not tantamount, as Appellant fears, to an unconstitutional endorsement of "general" search warrants. The Fourth Amendment prohibits the enforcement of warrants that are so lacking in specificity that the police may seemingly engage in "general, exploratory rummaging in a person's belongings." *Walthall v. State*, 594 S.W.2d 74, 78 (Tex. Crim. App. 1980) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). But no indiscriminate "rummaging" through the content of Appellant's blood was authorized here; nor does the record suggest that any occurred. On the basis of the warrant issued in this case, the State was not authorized to analyze Appellant's blood for, say, genetic information,[2] or for any other biological information not supported by the same probable cause that justified the extraction of his blood sample in the first place.

In his motion to suppress, Appellant sought only to exclude the evidence of his blood-alcohol concentration. Extraction of his blood for the purpose of testing his blood for *this* specific information was justified by the strong odor of alcohol the officer noticed

---

[2] *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2178 (2016) ("[A] blood test . . . places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading.").

when he first confronted Appellant and found him to exhibit characteristics of intoxication—a fact confirmed by the neutral magistrate in the warrant. The State does not contend that it should have been able to analyze the blood for any other purpose on authority of the warrant in this case. On the facts of this case, Appellant's concern about the lack of specificity in the warrant is unfounded.

We affirm the judgment of the court of appeals.

DELIVERED:          September 16, 2020
PUBLISHED