# IN THE COURT OF APPEALS OF IOWA

No. 23-0148
Filed July 3, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ADAM MULLEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Boone County, Stephen A. Owen,

Judge.


        On discretionary review, the State challenges the order suppressing

evidence obtained following a traffic stop. **REVERSED AND REMANDED.**


        R.A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

On discretionary review, the State challenges the order suppressing evidence obtained following a traffic stop. The State contends the district court erred by suppressing a breath test result obtained pursuant to a search warrant after determining implied consent is the exclusive means of obtaining evidence during an investigation for operating a motor vehicle while under the influence (OWI). It also challenges the district court's determination that the statute governing search warrants does not authorize obtaining samples for chemical testing and that doing so violates due process and equal protection rights. Finally, the State contends the court erred by suppressing statements the defendant made during the traffic stop before being advised of his *Miranda* rights.

Because law enforcement may obtain a search warrant for chemical testing as an alternative to invoking the statutory implied consent procedure and doing so does not offend due process or equal protection, the district court erred by suppressing the breath test result. The defendant was not in custody such that he had to be advised of his *Miranda* rights before answering questions during a traffic stop. Because there was no violation of his constitutional rights, the district court erred by suppressing the defendant's statements. We therefore reverse the suppression ruling and remand for further proceedings.

**I. Background Facts and Proceedings.**

In July 2022, Boone County Sheriff's Deputy Quinten Gustafson stopped a Jeep driven by Adam Mullen. Mullen's Jeep matched the description of a vehicle driven by the perpetrator of an assault that allegedly occurred at a nearby boat ramp. Deputy Gustafson observed the vehicle traveling seventy-two miles per

hour, above the posted speed limit of sixty-five miles per hour, while pulling a trailer with a malfunctioning brake light.

Deputy Gustafson informed Mullen that he was stopped for speeding and the malfunctioning brake light. While they spoke, Deputy Gustafson noticed Mullen displayed signs of alcohol impairment: slurred speech, bloodshot and watery eyes, and a strong smell of alcoholic beverage. He ordered Mullen out of the vehicle and began asking about the incident at the boat ramp. When the deputy asked Mullen how much he had to drink, Mullen answered, "Uh, I had probably two beers when we were floating." The deputy then spoke with the vehicle's other passengers about the alleged assault and checked for outstanding arrest warrants while Mullen's stood outside the vehicle.[1]

Twenty minutes after the traffic stop began, Deputy Gustafson told Mullen that he believed Mullen consumed more than two alcoholic beverages. When the deputy asked him to perform field sobriety tests, Mullen declined. Deputy Gustafson then placed Mullen in handcuffs and stated, "You're just being detained for further testing."

---

[1] A conservation officer was present at the scene. While Deputy Gustafson interviewed Mullen's passengers, the officer spoke with Mullen at the side of the road. The officer then talked with the deputy while the deputy checked the validity of Mullen's license and the information provided by his passengers. Deputy Gustafson told the officer that he did not have cause to arrest anyone for assault but that he "might have an OWI on [Mullen]." The officer agreed with the deputy's assessment, noting that Mullen's eyes were "glossed over."

During their conversation, the officer asked the deputy if he should put Mullen in the backseat of the deputy's vehicle so Mullen could get out of the rain. The deputy replied, "Yeah, if you want to," before clarifying, "If [Mullen] wants to." The officer then asked Mullen, "Do you want to get in the car so you're out of the rain?" When Mullen declined, the officer said, "It's up to you. Just thought I'd give you an option."

Deputy Gustafson transported Mullen to the jail and applied for a warrant to obtain "[a] blood, urine, and/or breath specimen" for chemical testing. The application states that the deputy had probable cause to believe Mullen committed OWI. It details the deputy's training and experience in investigating OWI and states that "persons who have prior convictions for operating while intoxicated or who have been investigated for operating while intoxicated on previous occasions are more likely to refuse chemical testing." The application marks the signs of impairment the deputy observed: "Bloodshot eyes," "Watery eyes," "Slurred speech," "Smell of alcoholic beverage coming from Suspect's person," and "Unsteady gait/unsteady balance." It also recounts the deputy's observations in narrative form:

> While speaking with [Mullen,] I could smell a strong odor of ingested alcohol coming from [Mullen]'s person. I also observed [Mullen]'s eyes to be bloodshot and watery. [Mullen] admitted to having two beers while he was out on the river. I offered [Mullen] Field Sobriety Tests and he refused all of them. I placed [Mullen] in double locking handcuffs and put him in the back of my patrol vehicle. I transported [Mullen] to the Boone County Jail where he is being held.

After a magistrate approved the warrant, Deputy Gustafson obtained a sample of Mullen's breath that showed his blood alcohol level was .108, above the legal limit of .08.

The State charged Mullen with OWI. Mullen moved to suppress the results of the breath test, arguing that the deputy violated his equal protection rights by bypassing the implied consent procedure set out in Iowa Code section 321J.6 (2022). Mullen also claimed the statements he made about consuming alcoholic beverages are inadmissible because the deputy failed give *Miranda* warnings after placing him in custody.

After a hearing, the district court granted Mullens's motion. It held that the implied consent statute provides the exclusive means for obtaining evidence in an OWI investigation. It also determined that Iowa Code chapter 808, governing the issuance of search warrants, does not authorize collection of bodily specimens. The district court then concluded that obtaining a warrant to secure a sample for chemical testing, rather than invoking the statutory implied consent procedure, violated Mullen's rights to equal protection and due process of the law. Finally, it found the deputy violated Mullen's Fifth Amendment rights by interrogating him without administering *Miranda* warnings. On those grounds, the court suppressed the breath test results and Mullen's statements about consuming beer.

The State applied to the Iowa Supreme Court for discretionary review of the suppression ruling. The supreme court granted the application and stayed the proceedings. It denied Mullen's motion for limited remand to address a ground for suppression that the district court did not reach and transferred the appeal to this court for resolution.

**II. Scope and Standard of Review.**

The appellate courts review rulings on motions to suppress for correction of legal error. *State v. Starr*, 4 N.W.3d 686, 691 (Iowa 2024). "If the district court applied the law correctly and substantial evidence supports the court's findings of fact, we will affirm . . . ." *Id.* at 692 (quoting *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019)). But when a suppression ruling implicates constitutional rights, we review it de novo. *State v. Harbach*, 3 N.W.3d 209, 217 (Iowa 2024); *see also State v. Geddes*, 998 N.W.2d 166, 171 (Iowa 2023) ("We review constitutional challenges de novo."). On de novo review, the court independently evaluates the

totality of the circumstances shown in the record. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019). It gives deference to the district court's fact findings but is not bound by them. *Id.*

### III. Discussion.

The State appeals the order granting Mullen's motion to suppress evidence. It challenges the suppression of the breath test results and Mullen's statements about his beer consumption.

### A. Breath Test.

We begin with the suppression of the breath test results. The State contends that the district court erred by determining that the statutory implied consent procedure provides the exclusive means for obtaining evidence in an OWI investigation. It also challenges the determination that Deputy Gustafson violated Mullen's due process and equal protection rights by obtaining a warrant for chemical testing rather than invoking implied consent.

After the parties submitted their briefs, the Iowa Supreme Court decided *State v. Laub*, 2 N.W.3d 821 (Iowa 2024), which squarely addresses the issues raised by the State. In *Laub*, a Boone County Sheriff's deputy obtained a search warrant to collect a breath or blood sample from a motorist he suspected of OWI. 2 N.W.3d at 825. The district court suppressed the ensuing breath test results, holding that the deputy was not authorized to obtain a search warrant to collect and test a breath specimen. *Id.* at 826.

> The district court first reasoned that [the deputy] was required to invoke the statutory implied consent procedure. Obtaining a warrant, the district court stated, "eviscerate[d] the statutory right to refuse testing under implied consent and arbitrarily and summarily dispense[d] with the rights of citizens to withhold their implied

consent." The district court also held that [the deputy] had no statutory authority to obtain a search warrant to collect and test bodily specimens. The district court reasoned that chapter 808 "limits search authority to the search of persons and places and seizure of property." Chapter 808, the district court stated, "provides no express language for taking body samples, even breath samples." Finally, the district court held that [the deputy]'s decision to apply for and execute a search warrant violated [the defendant]'s right to equal protection of the laws and [the defendant]'s right to due process of law under the United States and Iowa Constitutions.

*Id.* (second and third alterations in original).

In *Laub*, the supreme court began by noting that several decisions have addressed whether the statutory implied consent law is the only way a law officer can obtain a bodily specimen and conduct chemical testing of the same in investigating an OWI case. *Id.* at 826–28. Among those is a published decision of this court that "addressed the exact question presented." *Id.* at 827 (citing *State v. Frescoln*, 911 N.W.2d 450 (Iowa Ct. App. 2017)). In *Frescoln*, we held that "the State's ability to obtain chemical testing is not limited to the provisions of chapter 321J so long as the procedure utilized conforms to constitutional requirements." 911 N.W.2d at 455. *Laub* emphasized the district court's error in failing to follow *Frescoln* as controlling precedent:

The district court erred in failing to adhere to *Frescoln*. *Frescoln* was a published decision of the court of appeals, and the district court was duty-bound to apply it. *See Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121–22 (Iowa 1973) (en banc) (explaining that trial courts are duty bound to follow controlling precedent); Randy J. Kozel, *Settled Versus Right: A Theory of Precedent* 19 (2017) [hereinafter Kozel, *Settled Versus Right*] (explaining that "vertical precedents are conclusive wherever they apply[:] . . . [t]he lower courts have no authority to depart from [vertical precedents]," and that lower courts are not "allowed to make predictions" about whether a higher court will overturn its precedent (emphasis omitted)).

*Laub*, 2 N.W.3d at 828 (alterations in original); *cf.* Iowa R. App. P. 6.904(2)(a)(2) (stating that "[u]npublished opinions . . . do not constitute controlling legal authority"); Iowa R. Ct. 21.22(3) (allowing this court to publish opinions "by majority vote of its members en banc"). For the same reasons, the trial court erred by ignoring *Frescoln*.

Because the supreme court is not bound by the holdings of this court, it considered the arguments for overruling *Frescoln* and holding chapter 321J is the only way a peace officer can collect a bodily specimen from a motorist. *Laub*, 2 N.W.3d at 828–31. In rejecting these arguments, the court reaffirmed that "the statutory right of refusal applies 'only when the implied consent procedures are invoked.'" *Id.* at 828–29 (citation omitted). If, as here, law enforcement does not invoke implied consent, it may use other methods to obtain evidence in an OWI investigation. *See id.* at 829 (noting that the provision of section 321J.9(1) prohibiting chemical testing after a refusal does not apply when implied consent procedures are not invoked). The court further held that chapter 321J "does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence." *Id.* at 830 (quoting Iowa Code § 321J.18). Thus, "the implied consent statute is not the exclusive means by which law enforcement may obtain chemical testing." *Id.* at 830 (quoting *Frescoln*, 911 N.W.2d at 454).

Next, the supreme court considered and rejected the claim that chapter 808 does not authorize search warrants for collection of bodily specimens. *Id.* at 832–34. "The Code's authorization to issue search warrants commanding the search of persons and the collection of personal property and evidence material to criminal

prosecutions implies the authority to seize anything of evidentiary value from the person searched, including bodily specimens." *Id.* at 832. It held that a contrary reading would violate the rules of statutory construction and interpretation and conflict with precedent and the established practice of law enforcement. *Id.* at 833.

Finally, the supreme court analyzed the claims that obtaining a search warrant rather than invoking implied consent violates equal protection rights, as well as substantive and procedural due process rights. *Id.* at 834–38. It rejected arguments identical to those adopted by the district court. *Id.* at 834 (noting that the district court held "choosing personal extra-legal routes for the sake of simplicity under color of law deprived [the defendant] of equal protection of the law under the Iowa and United States Constitutions" and "exclusion of evidence obtained upon such intentional violations is the legal, appropriate and just remedy via the exclusionary rule" (cleaned up)).

For the reasons set out in *Laub*, we reverse the grant of Mullen's motion to suppress the results of the breath test.

**B. Statements to Deputy Gustafson.**

The State next contends that the court erred by concluding that incriminating statements Mullen made during the traffic stop are inadmissible because the deputy did not inform Mullen of his *Miranda* rights. Twice during the traffic stop, Deputy Gustafson asked Mullen about his alcohol consumption. Both times, Mullen told the deputy that he consumed two beers that day. The State argues that the statements are admissible because Mullen was not in custody when he made the statements.

The district court found that Mullen was in custody when he made incriminating statements about his alcohol consumption:

> Mr. Mullen was not free to leave. His actions and whereabouts were tightly controlled by Deputy Gustafson. He was questioned about a specific fact that would constitute an element of a public offense, namely operating while intoxicated. The question came well after Mr. Mullen was stopped. At all times during the stop he is seen and heard acknowledging the deputy's authority and acceding to the deputy's commands.

Citing *California v. Beheler*, 463 U.S. 1121, 1123 (1983), the district court held that the deputy's questions violated Mullen's rights under the Fifth and Sixth Amendments.

The State challenges the finding that Mullen was under custodial interrogation at the time he made the statements. *See State v. Turner*, 630 N.W.2d 601, 607 (Iowa 2001) ("The requirements of *Miranda* are not triggered 'unless there is both custody and interrogation.'" (citation omitted)). It argues:

> Gustafson's language was calm, polite, and non-threatening—even when Mullen declined field sobriety testing and was subsequently handcuffed, the interaction between the men remained pleasant. Aside from the routine elements of a traffic stop, Gustafson did not need to make any additional shows of authority. The encounter took place in public, with three of Mullen's friends nearby. The deputy did not subject Mullen to intense confrontation of guilt or accusatory questions, he simply expressed his belief that Mullen's mannerisms were not consistent with his limited admission to drinking "two beers" and asked whether he would participate in field sobriety testing. At this point Mullen was not "free to leave," but no reasonable person would conclude at this point that there had been a detention equivalent to formal arrest. Gustafson's request for Mullen to participate in field sobriety testing did not make it so.

(Internal citations omitted.)

In determining whether a person is in custody when an inculpatory statement is made, the court employs an objective test. *Id.* The question is how

a reasonable person would view the situation based on all the surrounding circumstances. *Id.* In making this determination, the court considers four guiding factors: "(1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of her guilt; and (4) whether the defendant is free to leave the place of questioning." *State v. Park*, 985 N.W.2d 154, 168 (Iowa 2023) (citation omitted).

The statements at issue were made during a traffic stop. Although detaining a motorist during a traffic stop is a seizure, traffic stops do not ordinarily involve the level of custody for which *Miranda* warnings are required. *Berkemer v. McCarty*, 468 U.S. 420, 436–39 (1984); *State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994). Typically, traffic stops are brief and take place in public, which creates an atmosphere that "is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda*" and its progeny. *Berkemer*, 468 U.S. at 438. This is true even when the stop involves field sobriety testing. *See id.* at 423 (involving a traffic stop during which the motorist was asked "to perform a field sobriety test, commonly known as a 'balancing test'"); *Pennsylvania v. Bruder*, 488 U.S. 9, 11 (1988) (holding statements made by motorist in response to officer's question about drinking and request for field sobriety test were admissible); *In re S.C.S.*, 454 N.W.2d 810, 813–14 (Iowa 1990).

Deputy Gustafson stopped Mullen's vehicle because it matched the description of the vehicle used by a suspect in a reported assault. The deputy had at least reasonable suspicion to stop Mullen to investigate the assault. He also had probable cause to cite Mullen for exceeding the posted speed limit and the malfunctioning brake light on his trailer.

After informing Mullen of his traffic violations, Deputy Gustafson asked him to exit the vehicle. Mullen got out and spoke with the deputy at the side of the road about the assault allegation. The deputy was cordial during the discussion, which lasted less than five minutes. From Mullen's appearance and the odor of ingested alcohol, the deputy began to suspect Mullen was under the influence of alcohol. Deputy Gustafson asked Mullen about consuming alcoholic beverages, and Mullen admitted drinking two beers during his outing.

After telling Mullen to "hang on right here," the deputy spoke to the vehicle's passengers about the assault. Afterward, the deputy returned to his vehicle and checked Mullen's license and the information provided by his passengers while Mullen remained on the side of the road. Mullen was offered the option of taking shelter from the rain in the back of the deputy's vehicle, but he declined.

Less than twenty minutes after stopping Mullen, the deputy returned to where he remained at the side of the road and discussed the assault investigation. That exchange, which lasted one and one-half minutes, concluded with the deputy asking, "And you said you had two beers?" After Mullen agreed, the deputy told him that "it looks like you've had a lot more than just two [beers]." It was then that Deputy Gustafson asked Mullen if he would perform field sobriety tests, which Mullen declined. Twenty-two minutes after initiating the traffic stop, the deputy placed Mullen in custody by handcuffing him for transport to the jail.

The facts do not show that Mullen was in custody when he made statements about his consumption of alcoholic beverages. The overall length of the traffic stop was only twenty-two minutes, during which the deputy spoke with Mullen for less than seven minutes. Mullen was not restrained, and the deputy's demeanor was

calm and non-threatening throughout the interaction. Because the traffic stop did not amount to a custodial interrogation, the protections afforded under *Miranda* did not apply. Accepting Mullen's argument would mean every traffic stop must start with *Miranda* warning, contrary to established precedent.

We reverse the grant of the motion to suppress Mullen's statements during the traffic stop. The case is remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**