# IN THE COURT OF APPEALS OF IOWA

―――――――

No. 24-1260
Filed January 28, 2026

―――――――

**State of Iowa,**
Plaintiff–Appellee,
v.
**Ryan Holland Melcher,**
Defendant–Appellant.

―――――――

Appeal from the Iowa District Court for Allamakee County,
The Honorable Laura Parrish, Judge.

―――――――

**AFFIRMED**

―――――――

Martha J. Lucey, State Appellate Defender, and Allison Linafelter, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney
General, attorneys for appellee.

―――――――

Considered without oral argument
by Tabor, C.J., Buller, J., and Bower, S.J.
Opinion by Bower, S.J. Dissent by Tabor, C.J.

1

**BOWER, Senior Judge.**

Ryan Melcher appeals his conviction for operating while intoxicated (OWI), challenging the denial of his motion to suppress, and questioning the voluntariness of his consent to a blood sample test. Finding his consent was voluntary and within constitutional boundaries, we affirm.

## I.      Background Facts and Proceedings.

In the early morning hours of February 19, 2023, Melcher was in a single car accident, hitting a tree. Melcher sustained a wound to his forehead, and blood covered his forehead and eyes; he called his mother to take him to the hospital. A doctor reported the accident, and Deputy Ted Jacobsen arrived at the hospital to investigate. Deputy Jacobsen's interaction with Melcher was captured on his body camera. A nurse was treating Melcher when the deputy arrived and injected him with medication, including morphine. The deputy spoke with Melcher, who admitted to having "three or four" beers at a friend's house. When the deputy asked for a preliminary breath test, Melcher indicated he did not think he would be able to provide the breath sample necessary to register.

The deputy then asked Melcher to provide voluntary consent for a blood draw, but he did not invoke Iowa's implied consent procedures.[1] The deputy, reading from a voluntary consent form, advised Melcher that he had the right to refuse consent but, if he did, the deputy could then apply for a warrant for his blood. The deputy then told Melcher if he provided the sample, he could go home with his mother that night. When Deputy Jacobsen

---

[1] In a training provided to law enforcement officers, the Allamakee County Attorney's office had told the officers to use this voluntary "Consent to Provide Sample" in OWI cases. This form is separate and distinct from the legislature-created implied consent procedure for consent in OWI cases. *See* Iowa Code § 321J.6 (2023).

asked if he would want to provide a sample, Melcher gestured slightly and said, "sure."

The voluntary consent form stated:

**Consent to Provide Sample**

I understand that I am being asked by a peace officer to provide a sample of my breath, blood, or urine for the purpose of investigation of the public offense of Operating While Intoxicated.

I understand that I have the constitutional right to REFUSE the peace officer's request.

I understand that if I refuse the peace officer's request, he or she may apply for a search warrant. I understand that if that application is granted by a judge or magistrate, I will be court ordered to provide a sample of my breath, blood, or urine.

Knowing of my lawful right to refuse to consent to provide such a sample, I am voluntarily and willingly providing my sample to the peace officer.

This written permission to search without a search warrant is given by me to the peace officer(s) voluntarily and without any threats or promises of any kind at _____M on this _____ day of _____ 20_____.

The deputy filled out the time and date on the form, then handed it to Melcher. Melcher agreed to sign but also mentioned he couldn't see anything, and his mother indicated he normally wore glasses. Melcher then signed on the appropriate line, holding the clipboard very close to his face and without reviewing the consent form.

Melcher's tests came back above the statutory limit for alcohol and were positive for marijuana metabolites. Melcher filed a motion to suppress the results, arguing his medical condition did not permit voluntary consent, the deputy coerced the decision through promising he could go home, and

the search did not fall within a recognized exception to the constitutional warrant requirement.

After a brief suppression hearing, where the court heard testimony from Deputy Jacobsen and Melcher and admitted evidence including the deputy's bodycam footage, a deposition of Deputy Jacobsen (which included a discussion of why he opted for a voluntary consent form instead of implied consent), and toxicology test results, the district court denied Melcher's motion. The court determined, "Considering the totality of the circumstances based on the record before the court, the defendant's consent to provide a blood sample in this matter was voluntary."

After denial of his suppression motion, Melcher agreed to submit to a trial to the court based on the minutes of testimony and attached documents. The court found him guilty of OWI. Melcher appeals, contesting only the denial of his motion to suppress.

## II.    Implied Consent.

Melcher argues on appeal the consent form used by the deputy "necessarily invoked Iowa's implied consent procedures." If we find the implied-consent question is not preserved, Melcher asserts the State did not prove his consent was knowing and voluntary.

The State vigorously argues Melcher did not preserve error below by failing to make an implied consent argument below. The State's brief concedes that if error is preserved, the recent supreme court case *State v. Flynn* "forbids what Deputy Jacobsen did in this case," and if we "reach[] the merits of the implied consent issue, suppression is the correct result." *See* 13

N.W.3d 843, 849–51 (Iowa 2024).[2] But the State argues that Melcher's "arguments below had not even a whisper of implied consent," and the district court never ruled on implied consent.

Melcher's response asserts "it is impossible to separate implied consent from the more general constitutional consent" and that the implied consent procedures were inherent in his challenge to whether his consent fell within a constitutional exception to the warrant requirement.

In analyzing actual consent as an exception to the warrant requirement, the supreme court observed, "The Federal and State Constitutions demarcate the outer bounds of lawful government action. But the legislature is free to draw a tighter circle and further limit a peace officer's conduct. And that is exactly what the implied consent statute does." *Id.* at 850. In other words, the implied consent procedures are a smaller subset within the constitutional demarcations.

Under controlling case law at the time of the hearing, the State was "not limited to the provisions of chapter 321J so long as the procedure

---

[2] The supreme court had recently said, "Properly understood, chapter 321J is a comprehensive statutory scheme to implement the consent exception to the constitutional preference for search warrants and not a mechanism to displace the constitutional use of search warrants." *State v. Laub*, 2 N.W.3d 821, 830–31 (Iowa 2024). *Flynn* then closed the loophole the deputy used here—seeking a voluntary consent around the warrant requirement other than the implied consent procedures despite meeting the statutory conditions for implied consent. 13 N.W.3d at 847. "[A] peace officer's request that a motorist submit" to testing of a bodily specimen where the section 321J.6 statutory conditions exist "is, in fact, an invocation of chapter 321J that requires a written request and the provision of advisories." *Id.* at 848–49. "The statutory implied consent procedure must be followed when the implied consent procedures are invoked." *Id.* at 851. In other words, if the implied-consent criteria are present—which they were here—law enforcement must use the implied consent process or obtain a warrant.

utilized conforms to constitutional requirements." *State v. Frescoln*, 911 N.W.2d 450, 455 (Iowa Ct. App. 2017). And when law enforcement "does not invoke implied consent, nothing precludes an officer from obtaining and executing a search warrant for bodily specimens." *Laub*, 2 N.W.2d at 829. No one argued prior to Melcher's appellate brief that implied consent had been invoked—it was not mentioned in his motion to suppress, discussed at the hearing, or addressed in the ruling. In fact, the argument in Melcher's suppression motion was "the officer clearly should have applied for a search warrant."

Without an argument to demonstrate the issue had been raised and decided by the district court, and since the exclusivity of statutory implied consent procedures was determined after the court's ruling, error is not preserved on Melcher's implied consent theory on appeal. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

### III.    Voluntary Consent.

While his statutory-procedures argument was not preserved, Melcher's constitutional argument was argued and decided below, and it serves as the basis for our analysis.[3] And even though the deputy's conduct does not fall within the legislature's "tighter circle," it may still fall within the wider boundaries of federal constitutional constraints. *See Flynn*, 13 N.W.2d at 850; *see also Frescoln*, 911 N.W.2d at 455 (explaining "the State's ability to obtain chemical testing is not limited to the provisions of chapter

---

[3] Melcher's constitutional argument still relies heavily upon implied consent statutes and caselaw. We address the arguments to the extent we can without that lens.

321J so long as the procedure utilized conforms to constitutional requirements," and "[a]dhering to the warrant requirement is the best means upon which to conform to the constitutional protections from unreasonable searches and seizures"); *State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025) (deciding a case based on preserved federal constitutional arguments with a broader circle of conduct than the narrower, unpreserved state constitutional arguments).

"Voluntary consent is one of the recognized exceptions" to the warrant requirement, and the State must "establish voluntariness by a preponderance of the evidence." *State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991). "We review the constitutionality of a search de novo," which "requires an independent evaluation of the record." *Frescoln*, 911 N.W.2d at 455. "We give considerable weight to the district court's assessment of voluntariness but are not bound by its factual findings." *State v. Baraki*, 981 N.W.2d 693, 697 (Iowa 2022) (citation omitted).

In determining Melcher's consent was voluntary and the search was not unconstitutional, the court found:

> Although [Melcher] was in the emergency room and being treated for injuries to his head, there is no indication from the behaviors of the medical personnel that his situation was emergent. The Defendant had been transported to the emergency room by personal vehicle, not ambulance. Neither the doctor nor the nurse was in the room for significant portions of the deputy's interaction with the defendant; it appeared that he had time to complete his investigation before further medical treatment was needed. The defendant was responsive to questions that were asked of him and appeared to interact appropriately with the deputy and the medical personnel. While the defendant's speech was somewhat slurred or unclear, the court noted that the defendant's speech during his testimony at the time of hearing was also somewhat slow and mumbled, suggesting that it's simply a normal speech pattern for him. Defendant's mother was present in the emergency room during the deputy's entire interaction with him and

gave no indication that she was uncomfortable with the defendant's state of mind. The deputy's interaction with the defendant was not overly coercive or pressuring in any way, lasting less than twenty minutes, and it appeared that the deputy was able to satisfactorily answer all of the defendant's questions regarding options for testing. The consent form was read to the defendant, in addition to the verbal explanation by the Deputy of defendant's options regarding consent.

Melcher argues three points: (1) the deputy failed to fully advise Melcher of his right to refuse testing and the potential consequences; (2) Melcher's consent was coerced by the deputy's threat to get a warrant without the legal right to obtain one; and (3) Melcher did not have the capacity to voluntarily consent.

We reiterate that the consent and procedure used by the deputy in this instance are no longer statutorily permissible, and our reasoning below cannot be used to justify any alternate voluntary consent procedure used when the implied consent conditions exist. *See Flynn*, 13 N.W.3d 847–49.

*Failure to Advise.* First, Melcher argues the deputy "did not advise Melcher of his statutory right to refuse testing and the consequences of such." This argument relies on the premise Melcher faced the same consequences as under the implied consent statutes. But the consent signed by Melcher provided the only consequence faced was the officer's ability to apply for a warrant and the possibility the court would grant it, and the deputy did advise Melcher of his right to refuse consent with the consequence of a warrant application. Without the invocation of implied consent, Melcher did not face the consequences provided under that statutory scheme. Melcher knew the only consequence ahead of him if he did not consent—the deputy applying for a warrant—and chose to sign. This argument fails.

8

*Coercion.* Melcher next claims he was coerced into signing by the deputy informing Melcher if he declined consent, "he would just get a warrant and get his blood anyway." We question whether this particular coercion argument is preserved, as the only coercion argued below was the deputy "telling him he could go home with his mom if he gave a sample," which the deputy later testified was an indication he would not be arresting Melcher; this version was not repeated on appeal. Melcher's appellate argument is again based on implied-consent law, where refusal to submit to chemical testing results in specific statutory consequences, but the officer can no longer seek a warrant outside of specific circumstances. *See State v. Stanford*, 474 N.W.2d 573, 575 n.1 (Iowa 1991). Because this voluntary consent was not part of the implied consent schema, and a warrant was the only consequence faced by not signing, the deputy advising of the consequence included in the consent form signed does not constitute coercion. The district court determined the deputy's interaction "was not overly coercive or pressuring in any way," and we agree. We do not find Melcher's consent was coerced.

*Capacity.* Melcher's last argument contends he was under the influence of morphine and alcohol as well as a head injury, so his ability to consent was impaired, and the State did not show he was capable of consent. Whether an "individual was intoxicated or under the influence of drugs" is a factor to consider in evaluating the voluntariness of consent. *State v. Lowe*, 812 N.W.2d 554, 572–73 (Iowa 2012) (citation omitted). The State counters by arguing the deputy's body camera video "shows [Melcher] was oriented to time, place, and person," he asked questions, and was able to communicate verbally and nonverbally. The State concedes the alcohol and painkillers "influenced Melcher," but urges it was not a capacity-disabling condition. And the district court—which had the opportunity to observe Melcher

9

during his testimony and compare it to his demeanor in the body-cam footage—determined Melcher was able to interact appropriately with others, was responsive to questions, and neither the medical personnel nor his mother (who were present in the room) displayed any doubt of Melcher's capacity to consent.

We agree with the district court and the State. Despite his head injury, alcohol use, and very late time, Melcher retained the capacity to call his mother to bring him to the hospital. Once the deputy was there, he appeared to understand what was going on, answered the deputy's questions, asked questions of his own, determined he wouldn't give a breath test, and made the decision to consent to the blood test. Melcher did not display a lack of mental capacity sufficient to invalidate consent, so Melcher's consent was voluntary, and it falls within the bounds of our constitutional parameters. *See State v. Gravenish*, 511 N.W.2d 379, 381–82 (Iowa 1994).

**AFFIRMED.**

Buller, J., concurs; Tabor, C.J., dissents

**TABOR, Chief Judge** (dissenting).

Because law enforcement did not obtain a search warrant for Melcher's blood, the State had the burden to show that he voluntarily consented to providing a sample. In his motion to suppress, Melcher challenged the State's proof of his consent.[4] That challenge preserved error on both implied and actual consent scenarios. *See generally State v. Flynn*, 13 N.W.3d 843, 850 (Iowa 2024) (noting "false distinction between consent given pursuant to the implied consent statute and actual consent"). And the State concedes that if error was preserved, *Flynn* controls the outcome, and suppression of Melcher's blood test is the correct result. Given these circumstances, I respectfully dissent. We should reverse the suppression ruling and remand for further proceedings.

The majority decision recognizes that *Flynn* "closed the loophole that the deputy used here" in obtaining Melcher's consent to giving a blood sample without giving the proper advisories. Yet the majority refuses to grant the relief afforded in *Flynn* because Melcher did not mention "implied consent" in his motion to suppress or at the suppression hearing.

But the suppression hearing did focus on implied consent, even if the State avoided that term. The deputy testified: "[B]ased off of my training and experience, you know, and the fact that [Melcher] had been involved in a motor vehicle accident and he had admitted to drinking, I proceeded with my OWI procedure." These conditions described by the deputy implicated

---

[4] Melcher alleged in his motion to suppress that the warrantless search was illegal because he was "not in a position to consent, coupled with the coercion of the officer in getting [his] consent." From there, he claimed the evidence was obtained in violation of his rights under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

section 321J.6(1) (2023); reasonable grounds existed for invoking implied consent procedures. The deputy then discussed the now-discredited "Consent to Provide Sample" form that he used to request Melcher's blood.[5] Yet any additional consent was irrelevant once the statute was triggered. *See Flynn*, 13 N.W.3d at 851 (citing *State v. Avery*, 13 P.3d 226, 230–31 (Wash. Ct. App. 2000)).

And Melcher's contention that the deputy should have applied for a search warrant rather than using that form was the logical counterpoint to challenging the validity of his consent. After all, the Constitution requires a search warrant unless an exception applies. Here, no exception applied because his consent was invalid.

As for the suppression ruling, the district court found Melcher's consent was voluntary and discussed the deputy's method of requesting the blood sample:

> The deputy's interaction with [Melcher] was not overly coercive or pressuring in any way, lasting less than 20 minutes, and it appeared that the deputy was able to satisfactorily answer all of [Melcher's] questions regarding options for testing. The consent form was read to [Melcher], in addition to the verbal explanation by the Deputy of [Melcher's] options regarding consent.

This discussion of the deputy's procedure echoes the error that *Flynn* identified. As law enforcement did in *Flynn*, the deputy here invoked implied consent without saying so. And when implied consent procedures are invoked, law enforcement must follow statutory procedures or else the test result is not competent. *Flynn*, 13 N.W.3d at 851. As its bottom line, the district court found that Melcher's consent was valid despite the deputy

---

[5] That form included a reference to Melcher's "constitutional right to REFUSE the peace officer's request" for a sample of his blood.

bypassing the requirement that he advise the motorist of the consequences associated with refusing or submitting to chemical testing. That finding supports Melcher's argument that he preserved error. By finding voluntary consent, the district court addressed the issue that Melcher asks us to review. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

For its preservation argument, the State relies on *State v. Manna*, 534 N.W.2d 642 (Iowa 1995). But that reliance is misplaced. On appeal, Manna argued that he did not consent to a search of his mouth when he complied with an officer's request to spit out the sunflower seeds he was chewing. *Manna*, 534 N.W.2d at 643. The supreme court found Manna's consent to the search, "if indeed it was a search," was voluntary. *Id.* at 644. But the supreme court declined to reach Manna's appellate argument that law enforcement lacked reasonable grounds to invoke implied consent under Iowa Code chapter 321J because the district court did not rule on that statutory challenge. *Id.* That fact pattern is unlike Melcher's situation. *Manna* provides no guidance on whether Melcher's constitutional challenge to the voluntariness of his consent to chemical testing encompassed an objection to the officer's compliance with statutory implied consent procedures.

But the question before us today has been addressed recently by our supreme court. First, in *State v. Laub*, the court discussed the overlap between statutory implied consent and the consent exception to the constitutional warrant requirement. 2 N.W.3d 821, 830–31 (Iowa 2024). "Properly understood, chapter 321J is a comprehensive statutory scheme to implement the consent exception to the constitutional preference for search

13

warrants and not a mechanism to displace the constitutional use of search warrants." *Id.* Next, in *Flynn*, the court explained that the implied consent procedures limited the conduct of peace officers beyond the boundaries set by the federal and state constitutions. 13 N.W.3d at 851 (quoting *State v. Frescoln*, 911 N.W.2d 450, 453 (Iowa Ct. App. 2017) ("Consent to chemical testing obtained under the implied consent statute falls under the voluntary consent exception to the warrant requirement.")).

In addressing this case law, the majority suggests that *Flynn* is prospective only in its application. For instance, the majority reasons that "[u]nder controlling case law at the time of the hearing, the State was 'not limited to the provisions of chapter 321J so long as the procedure utilized conforms to constitutional requirements.'" [6] In finding Melcher did not preserve error, the majority also notes that "the exclusivity of statutory implied consent procedures was determined after the court's [suppression] ruling." I disagree with the majority's emphasis on timing. True, the supreme court "has the power in overruling a prior decision to give the new rule only prospective application." *State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000). But nothing in *Flynn* suggests that it establishes a new rule or that its application should be prospective only. What's more, the State does not argue for a prospective-only application of *Flynn*. So the chronology of *Flynn* does not foreclose enforcing its principles when the accused challenges the consent exception to the search warrant requirement.

As Melcher argues, "the implied-consent statute occupies the field as the 'comprehensive statutory scheme to implement the consent exception to

---

[6] For this proposition, the majority quotes *Frescoln*, 911 N.W.2d at 455. But *Flynn* did not overrule *Frescoln* nor undermine its analysis of chapter 321J. In fact, *Flynn* relied on *Frescoln* for its insights on consent to chemical testing.

the constitutional preference for search warrants.'" *State v. Bachman,* No. 23-1502, 2025 WL 1177453, at \*5 (Iowa. Ct. App. Apr. 23, 2025) (quoting *Flynn,* 13 N.W.3d at 850–51). Because the deputy veered outside the implied-consent statute here, the district court erred in allowing the test results into evidence. Melcher challenged his consent on constitutional grounds, which are interwoven with the implied consent provisions. Thus, Melcher "is not raising a new issue on appeal, and there would be no unfairness to the State or the district court if we consider the alleged statutory violation." *See State v. Ness*, 907 N.W.2d 484, 488 (Iowa 2018). For these reasons, we should reverse and remand for further proceedings.